[No. 39766.    Department One.    February 13, 1969.]

ZEBRA DISTRIBUTING CO., INC., *Appellant*, v. ACE FIREWORKS, INC., *Respondent*.*

*Burkey, Marsico, Rovai & McGoffin*, by *George F. Marsico*, for appellant.

*Breskin, Rosenblume & Robbins* by *Arnold B. Robbins* and *Seed, Berry & Dowrey*, by *Richard W. Seed*, for respondent.

FINLEY, J.—Appellant Zebra Distributing Co., Inc. (hereinafter Zebra), is a Washington corporation engaging in the wholesale distribution of fireworks. It does not sell at retail. Respondent Ace Fireworks, Inc. (hereinafter Ace),

*Reported in 450 P.2d 962.

is also a wholesale distributor of fireworks. Due to the structure of the fireworks market and the provisions of RCW 70.77.120-.910, it appears that a fireworks wholesaler prepares numerous assortments for boxed sale, advertises these assortments heavily and relies upon the brand image developed thereby to obtain retail outlets. These retail outlets are generally charitable, benevolent, or service organization stands, which operate only during the fireworks sale season. See RCW 70.77.395.

Zebra is the successor to Zebra Fireworks Co., Inc., which engaged in wholesale and retail sale of all types of fireworks in Washington prior to the adoption of the present fireworks law in 1961. It has been in the fireworks business in Washington since 1946: first as a partnership, then since 1959 as a corporation. Ace entered the fireworks market in 1965.

In 1957 appellant's predecessor in interest registered with the Secretary of State under the provisions of RCW 19.77-.010-.920 the trademark "Safe and Sane Yankee Doodle Giant Fireworks Assortment," and in 1962 appellant registered "Zebra Family Lawn Display Fireworks Assortment." During the early part of 1966 appellant Zebra became aware that Ace was preparing for the 1966 fireworks season two assortments to be marketed as "Yankee Doodle Dandy" and "Family Lawn Display." A letter of complaint was written to Ace claiming infringement and threatening legal action. On advice of counsel, Ace then changed its projected market entries to "Dandy Yankee" and "American Family Home Display."

Zebra commenced this action on May 31, 1966, seeking injunctive relief against a claimed use of its trademarks, and obtained a temporary injunction against the sale of the above market entries on June 7, 1966. This injunction continued in force throughout the 1966 fireworks sale season. After trial in early 1967, the injunction was dissolved and Zebra's case dismissed with prejudice.

Zebra has appealed. Error is assigned to the trial court's findings of fact regarding the descriptive nature of the

term "Family Lawn Display," the common usage of "Yankee" and "Yankee Doodle," and the lack of confusing similarity between the Zebra and Ace boxes with the respective "Yankee" labels applied. Error is also assigned to the trial court's conclusion of law that the descriptive term "Family Lawn Display" is nonregisterable, to the conclusion of law regarding the nonregisterability and nonappropriability of "Yankee Doodle," and to the conclusion regarding the failure of Zebra to prove that the terms had acquired a secondary meaning.

The finding of the trial court that "Lawn Display" and "Family Lawn Display" are descriptive terms in the fireworks industry is supported by substantial evidence and will not be disturbed. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). A merely descriptive mark is nonregisterable. RCW 19.77.020(5). The only registerable portion of what plaintiff-appellant registered in 1962 was "Zebra," and there is no claim that the respondent ever made use of that term.

Similarly, the only common, or dubious, portion of the other mark is the word "Yankee." That word was once restricted to the inhabitants of New England. Of late, it has come into common worldwide usage to describe United States citizens, and especially members of the armed forces. The word "Yankee," in and of itself, is clearly within the public domain. *Cf. Hart Schaffner & Marx v. Empire Mfg. Co.*, 197 F.2d 558 (C.C.P.A. 1952) ("Dixie" nonappropriable).

"Yankee Doodle" is a fanciful term with a long history and may well be separable from "Yankee." It has been used in a great variety of commercial contexts. In connection with a claimed infringement by "Dandy Yankee," however, relief must be predicated upon a confusion or colorable imitation of the marks. RCW 19.77.140. The trial court found no such confusion. That finding rested upon substantial ·evidence and will not be disturbed. *Thorndike v. Hesperian Orchards, Inc., supra.*

This lawsuit thus arises from a dispute as to whether appellant has succeeded in establishing a sec-

ondary meaning for its marks sufficient to entitle them to protection. *See Foss v. Culbertson,* 17 Wn.2d 610, 136 P.2d 711 (1943); Annot., 150 A.L.R.2d 1067 (1944).

The essence of such an action is unfair competition and the existence of such competition is always a question of fact. *Foss v. Culbertson, supra.* The factual controversy in this case was resolved by the trial court's conclusion that plaintiff-appellant had not shown that its marks had acquired a secondary meaning, *Hoke v. Stevens-Norton, Inc.,* 60 Wn.2d 775, 375 P.2d 743 (1962), and that there was no confusing similarity between the two "Yankee" packages, and could be no confusion as to the source of the two products. Those findings rested upon substantial evidence and will not be disturbed. *Thorndike v. Hesperian Orchards, Inc., supra.*

The decision of the trial court is affirmed.

HUNTER, C. J., HILL, WEAVER, and HAMILTON, JJ., concur.