[No. 5449–1. Division One. April 10, 1978.]

RAY WINE, ET AL, *Appellants,* v. GEORGE THEODORATUS, ET AL, *Respondents.*

*Luvera & Mullen* and *Paul N. Luvera, Jr.*, for appellants.

*Bannister, Bruhn & Cuningham* and *John R. Cuningham,* for respondents.

DORE, J.—

THE FACTS

The plaintiffs Ray and Beulah Wine own 80 to 90 acres of land in beautiful Skagit County nestled between 100–foot trees and rolling hills along river frontage. They developed approximately five acres of this land for business purposes on which are located three buildings wherein they conduct a business operation consisting of a laundromat, beauty shop and gift shop. They also have approximately 40 installations for camping and trailers which they rent on a daily basis.

Plaintiffs began their business in the early 1970's and conducted business under the name "Wilderness Village." On March 15, 1973, plaintiffs filed a certificate of assumed name with the Skagit County Auditor, pursuant to RCW 19.80, indicating that they were doing business under that name. A sign with the trade name "Wilderness Village" was erected on the property in 1971 and the name has been continuously used as a business trade name from that time to the present. In addition to the sign plaintiffs advertised under "Wilderness Village" in a national trailer and travel club publication. They also advertised in "Sunset Western Campsites," a national camping publication, as well as a yearly tourist newspaper magazine known as the "Cascadian."

In 1972 the defendants purchased approximately 220 acres of land located approximately 16 miles from plaintiffs' property, also with river frontage along the Skagit River. The property was intended as a recreational real estate

development. The purchasers of defendants' platted lots would begin by using the property for camping until permanent homes were constructed. Defendants' advertising emphasized camping and recreational use of the property. However, 100 acres were set aside and designed for future development of campsites according to the testimony of one of the defendant partners.

Defendants' property had a sign advertising "Wilderness Village Recreation Lots" located so that travelers on the highway proceeding in the direction of the plaintiffs' property could see the sign. By driving across a bridge they would arrive at the defendants' property which was marked with a sign that said "Wilderness Village." The only recorded use of the trade name by defendants took place in 1973 when a corporation was formed called "Wilderness Village Community Association."

When the plaintiffs discovered that the defendants were using their business name "Wilderness Village" as a trade name, they had their attorney direct a letter to defendants alleging that they had the prior use and appropriation of the name and requested that they cease from using the same. The parties could not resolve their differences as to who was entitled to use the name. Nevertheless the defendants continued to utilize heavy and expensive advertising. Advertisements were placed by the defendants in the Concrete Herald Travel Guide in 1973, the Seattle P.I., the Seattle Times, 5–Center Want Ads, the Concrete Herald, the Skagit Valley Herald, Pacific Press Limited, the Stanwood News, the Omak–Okanogan Chronicle, Okanogan Independent, Whidbey Press, Puget Sound Mail, and the Bellingham Herald, and in addition, advertisements were given over the radio and at public gatherings, all of which used the name "Wilderness Village." From 1973 through 1976 defendants spent approximately $5,000 in printed advertising, all using the name "Wilderness Village."

The defendants also printed 35,000 copies of an advertising publication entitled "The Wilderness Villager" in which the business name "Wilderness Village" was used repeatedly. The advertising done by defendants in connection with this advertisement used the words "camping", "river frontage" and talked about the same type of activities the plaintiffs were offering to the public in connection with their business. This brochure was circulated throughout the state of Washington as well as in Canada.

The plaintiffs commenced this action in February of 1976 seeking a permanent and absolute injunction prohibiting the defendants from utilizing the trade name "Wilderness Village." Plaintiffs also sought reasonable attorneys' fees under the Washington Consumer Protection Act.

The trial court found that plaintiffs were entitled to a limited injunction in connection with defendants' use of the name "Wilderness Village." However, the judgment and decree of injunction provided that both parties were entitled to use the trade name "Wilderness Village" in connection with their respective businesses. Such decree further provided for a limited injunction directing that if the defendants advertised by signs on the state highway for a distance of 10 miles either east or west from the city limits of Concrete, then "it must be clearly designated by defendants that their properties are being offered for sale only and not for transient or overnight camping purposes." The court further provided that if defendants advertised overnight camping facilities they must also advertise plaintiffs' business as well. The court awarded an attorneys' fee of $750 to plaintiffs' counsel under the Consumer Protection Act.

The plaintiffs appeal the trial court's judgment and decree of injunction contending that they are entitled to an absolute injunction prohibiting defendants from using the name "Wilderness Village" in its entirety.

704

## ISSUE

Whether the trial court's limited injunction against the defendants should be affirmed or whether plaintiffs are entitled to an absolute injunction prohibiting the defendants from use of the name "Wilderness Village?"

## DECISION

Guidelines for the use of trade names have been previously set forth by our Supreme Court. These guidelines were stated in *Holmes v. Border Brokerage Co.*, 51 Wn.2d 746, 750–51, 321 P.2d 898 (1958):

In the case of *Seattle, etc. Ass'n v. Amalgamated Ass'n, etc.*, 3 Wn. (2d) 520, 101 P. (2d) 338 (1940), we reviewed extensively our previous decisions involving the right to use a trade name and adopted therein eight rules of law for guidance in trade name cases. These rules were later cited in *Foss v. Culbertson*, 17 Wn. (2d) 610, 136 P. (2d) 711 (1943). We deem it advisable for the purpose of this appeal to again state these rules, which are as follows:

"*First:* The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business."

"*Second:* A person, whether individual or corporate, may not use any name, not even his or its own, which is the distinctive feature of a trade name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other."

"*Third:* The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator."

"*Fourth:* To acquire the right to use a particular name, it is not necessary that the name be used for any considerable length of time. It is enough to show that one was in the actual use of it before it was begun to be used by another."

"*Fifth:* A trade name may be abandoned or given up by the original appropriator, and, when it is so abandoned or given up, any other person has the right to seize upon it immediately, and make use of it, and thus acquire a right to it superior not only to the right of the original user, but of all the world."

"*Sixth:* A trade name, in order to be an infringement upon another, need not be exactly like it in form and sound. It is enough if the one so resembles another as to deceive or mislead persons of ordinary caution into the belief that they are dealing with the one concern when in fact they are dealing with the other."

"*Seventh:* The rule is no different when the name, or some part thereof, is a geographical name, or contains descriptive words which have acquired a secondary meaning."

"*Eighth:* Prior right to the use of a name will be protected by injunction against others using it unfairly."

(Italics ours.)

In the *Holmes* case both parties were using the trade name "Border Brokerage Company." The court there granted the plaintiff injunctive relief prohibiting the defendant corporation from using the same name the other company had used previously and before defendant had used it. The plaintiffs had commenced their injunctive action because of the confusion that had arisen and which would increase if the defendant corporation carried out its primary business as a custom house broker in the same customs district.

*Tradewell Stores, Inc., v. T.B. & M., Inc.,* 7 Wn. App. 424, 425, 500 P.2d 1290, 1292 (1972), was an action for trade name infringement and unfair competition brought in Kitsap County Superior Court by plaintiff Tradewell Stores, Inc., against defendant T. B. & M., Inc.

The trial court's unchallenged finding was that plaintiff had appropriated a trade name, "Family Market," to denominate a discount food store operation in Shelton, (Mason County) Washington, and that defendant's later use of the name, "Family Mark–It," to describe a similar discount food store in Bremerton, (Kitsap County) Washington was an infringement.

The trial court enjoined defendant from the unqualified use of the name "Family Mark–It" but allowed the use of that name "when qualified by additional words either before or after, which are of a personal or geographic nature." Defendant chose to satisfy the injunction by use of the prefix "Al's."

The appellate court affirmed the injunction but in addition held that attorney's fees should have been allowed under RCW 19.86.090.

In *Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742, 551 P.2d 1398 (1976), the court found that advertisements by the World–Wide Trophy Outfitters placed in Field and Stream, a magazine of general circulation, constituted unfair or deceptive acts or practices within the meaning of RCW 19.86.020 and the trial court erred when it concluded the act did not apply, and reversed and remanded the action.

In the *Fisher* case the court stated, on pages 747–48, the test of inquiry to determine whether the advertising was deceptive within the Consumer Protection Act:

> Our inquiry, then, is to determine whether the advertisement and representations by World–Wide constitute an unfair or deceptive practice and, if so, whether such conduct affects the public interest. An "unfair or deceptive practice" does not require a finding of an intent to deceive or defraud and therefore good faith on the part of the seller is immaterial. *See F.T.C. v. Algoma Lumber Co.,* 291 U.S. 67, 78 L. Ed. 655, 54 S. Ct. 315 (1934); *Koch v. F.T.C.,* 206 F.2d 311 (6th Cir. 1953). To constitute a deceptive practice, the advertisement need only have a tendency or *capacity* to deceive a substantial portion of the purchasing public. *Exposition Press, Inc. v. F.T.C.,* 295 F.2d 869, 873 (2d Cir. 1961). Here, the trial court specifically found that defendant's advertisements had the *capacity* to deceive and were in fact deceptive as to the plaintiffs. This unchallenged finding is a verity. CAROA 43; *State v. Baker,* 1 Wn. App. 420, 462 P.2d 254 (1969).

(Footnote omitted.)

In view of the fact that the State Highway Act now bans any signs along state highways, it is clear that the limited injunction against the defendants, as provided in the court decree in reference to signs, is meaningless as both parties are prohibited from erecting signs on the highway. In analyzing the correctness of the limited injunction it would be

helpful to recite the trial court's findings of fact and conclusions of law.

### FINDING OF FACT VII

In so far as the operation of the laundromat, beauty shop, gift shop were concerned, there was no similarity of business nor competition in that regard between Plaintiff and Defendant. However, Defendant's advertising regarding camping, trailers, motor homes and recreational use of Defendant's land tended to confuse in the public mind the business of Defendants with that of Plaintiffs. The Court, however, finds no actual fraud nor actual intent to deceive on the part of Defendants in this regard.

### FINDING OF FACT VIII

Defendants appropriated precisely the same name as previously used by Plaintiff. The area where these two businesses are conducted is within a radius of 20 miles of each other. This particular area is being developed as building and camping sites because of the North Cross State Highway now in operation. The State highway is heavily used by the general public for recreational purposes.

### FINDING OF FACT IX

Plaintiff continuously utilized the name from the early 1970's to the present time "Wilderness Village." They advertised in national camping and recreational publications as well as local advertising. Defendants engaged in extensive advertising throughout the State of Washington. They continued from 1973 to the present time to advertise the name "Wilderness Village." The Defendant's advertising has tended to cause confusion as to whether they were in the business of providing camping and overnight facilities such as the Plaintiff provided to the public.

### CONCLUSION OF LAW I

Plaintiffs are entitled to injunctive relief in connection with Defendant's use of the name "Wilderness Village."

As the findings of fact are not challenged by a cross appeal by the defendants, they must be considered verities.

The trial court found in the subject case that plaintiffs used the name "Wilderness Village" for business purposes before the defendants began using the name in 1973. The

court also found the defendants' advertising program in using "Wilderness Village" has tended to cause confusion as to whether the defendants were in the business of providing camping and overnight facilities such as the plaintiffs provided to the public. The court also found that defendants' appropriation of plaintiffs' trade name constituted unfair and deceptive practice in violation of RCW 19.86.020.

 We agree with the trial court's findings and its conclusion that plaintiffs are entitled to "injunctive relief in connection with defendants' use of the name 'Wilderness Village.'" However, we hold that the limited injunctive relief granted is of little protection or benefit to the plaintiffs nor does it eliminate the confusion by the public in attempting to discern the identity of the parties' separate businesses. We are convinced that this confusion will continue to increase in the future, unless a prohibitive injunction is issued.

We, therefore, reverse and remand this case to the Superior Court for Skagit County with directions to amend its judgment and decree of injunction under date of February 14, 1977, by prohibiting the defendants forthwith from any unqualified use of the name "Wilderness Village." The court may authorize defendants to use the name "Wilderness Village" *if* such name is qualified by additional words either before or after which are of a personal or geographic nature, and which the court finds will not confuse the general public as to the identity of the separate businesses of the parties.

Reversed and remanded for further proceedings consistent with this opinion.

FARRIS, C.J., and CALLOW, J., concur.