[No. 52717–2.   En Banc.   February 26, 1987.]

NORDSTROM, INC., *Petitioner,* v. G. JAMES
TAMPOURLOS, ET AL, *Respondents.*

736

*Lane, Powell, Moss & Miller,* by *John R. Tomlinson* and *Rudy A. Englund,* for petitioner.

*Robert J. Hall* and *William S. Bryan,* for respondents.

DORE, J.—We are asked to decide whether a trade name infringement constitutes a Consumer Protection Act violation justifying the award of attorney fees and expenses. We hold that it does, and reverse the Court of Appeals decision denying Nordstrom reasonable attorney fees.

### FACTS

The pertinent facts of this case are basically undisputed. Nordstrom and Tampourlos had an agreement for a number of years in which Tampourlos would operate a beauty salon in four Nordstrom stores. By 1981, Tampourlos operated a single beauty salon in the Bellevue Nordstrom store, and this was to be closed in January 1982 because Nordstrom intended to move to a new store, and did not wish to continue its salon operation in its new location.

Tampourlos decided to open his own salon under the name "Nostrum," and scheduled the opening date for early November 1981. The typeface for the "Nostrum" beauty salon was identical to that of the Nordstrom logo, and appeared in an article in the Seattle Post–Intelligencer on October 26, 1981.

Nordstrom filed suit against Tampourlos on October 29, 1981, alleging infringement of trade name and unfair competition. Specifically, Nordstrom alleged that Tampourlos' infringement violated RCW 19.86 (Consumer Protection

Act) and 15 U.S.C. § 1126. Nordstrom moved for a temporary restraining order to enjoin the use of the name "Nostrum". The court, however, only enjoined the use of Nordstrom's logo.

Nordstrom immediately terminated Tampourlos' lease operation in the Bellevue store. Although Tampourlos challenged this termination by seeking a temporary restraining order, the trial court held that Tampourlos' actions in using the Nordstrom logo and "Nostrum" name justified Nordstrom's unilateral termination of the agreement. This ruling was upheld by the Court of Appeals, and was not raised by Tampourlos in a response to Nordstrom's petition for review. Accordingly, pursuant to RAP 13.7(b), the issue of whether or not the termination of the lease was proper is not before us.

Tampourlos opened the Bellevue beauty salon under the name "Nostrum, the Styling Salon" in November 1981. A trial was held the following year to determine whether the use of that name constituted a trade name infringement and was an unfair method of competition pursuant to RCW 19.86, the Consumer Protection Act. The trial court concluded that the use of the name "Nostrum" was a trade name infringement, and permanently enjoined Tampourlos from using it in connection with his salon. This decision was affirmed by the Court of Appeals and is not now challenged. RAP 13.7(b).

The trial court also awarded Nordstrom over $25,000 in attorney fees and costs. The Court of Appeals, however, vacated this award on the basis that no public interest showing was demonstrated, and therefore the Consumer Protection Act had not been violated. Nordstrom petitioned for review. We reverse the Court of Appeals, order an award of reasonable attorney fees and remand to the trial court for a determination of reasonable attorney fees for Nordstrom.

CONSUMER PROTECTION ACT

RCW 19.86.020 provides that "[u]nfair methods of com-

petition and unfair or deceptive acts . . . in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.090 allows a private person to bring a civil action to enjoin further unfair acts and "recover the actual damages sustained by him . . . together with the costs of the suit, including a reasonable attorney's fee . . ." Thus, if Tampourlos' actions constitute an unfair method of competition, then the trial court's award of attorney's fees was proper and should be reinstated.

This court recently clarified when an act constitutes an unfair method of competition within the ambit of the Consumer Protection Act. In *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 719 P.2d 531 (1986), this court listed five requirements that must be met in order for a private party to establish a Consumer Protection Act violation. They are: (1) Is the action complained of an unfair or deceptive act or practice? (2) Did the action occur in the conduct of trade or commerce? (3) Is there a sufficient showing of public interest? (4) Was there injury in the plaintiff's business or property? and (5) Was there a causal link between the unfair acts and injury suffered? *Hangman Ridge,* at 780.

It is clear that the first, second, fourth, and fifth requirements were easily met in this case. As to the first requirement, that the action complained of be unfair or deceptive, the Court of Appeals, *Tradewell Stores, Inc. v. T.B. & M., Inc.,* 7 Wn. App. 424, 500 P.2d 1290 (1972), when considering the same question, decided that wrongful appropriation of a trade name was a deceptive or unfair trade practice. The appellate court analogized the Washington Consumer Protection Act to a federal statute (15 U.S.C. § 45(a)) and cases *Niresk Indus., Inc. v. FTC,* 278 F.2d 337 (7th Cir. 1960); *FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 13 L. Ed. 2d 904, 85 S. Ct. 1035 (1965) and held a violation had occurred. Similarly, in *Wine v. Theodoratus,* 19 Wn. App. 700, 577 P.2d 612 (1978) the Court of Appeals ruled that the inadvertent use of the name "Wilderness Village" constituted a trade name infringement and justified the award

of attorney fees under the Consumer Protection Act.

■ We believe these precedents are persuasive authority that the trade name infringement was an unfair or deceptive act as defined by the Consumer Protection Act. The trial court specifically found that the appropriation of Nordstrom's name "tends to and does deceive or mislead persons of ordinary caution into the belief that they are dealing with one concern when in fact they are dealing with the other." Finding of fact 11. Clearly, this prong of the *Hangman Ridge* requirement is met.

■ The second prong of the *Hangman Ridge* test is also fulfilled by Tampourlos' actions. RCW 19.86.010(2) broadly defines the scope of trade or commerce as:

> "Trade" and "commerce" shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington.

Prior rulings by this court have broadly interpreted this provision to include every person conducting unfair acts in any trade or commerce. *See, e.g., Short v. Demopolis,* 103 Wn.2d 52, 61, 691 P.2d 163 (1984). In this type of case, involving the use of a trade name advertising to the public, the sale of goods and services falls squarely within this broad definition. This second requirement of the *Hangman Ridge* test is met.

■ The fourth and fifth prongs of the *Hangman Ridge* test were also met. The fourth prong of the *Hangman Ridge* test is that Nordstrom must be injured in its business or property. This requirement is based on RCW 19.86.090, which uses the term "injured" rather than suffering "damages." This distinction makes it clear that no monetary damages need be proven, and that nonquantifiable injuries, such as loss of goodwill would suffice for this element of the *Hangman Ridge* test. This is bolstered by the fact that the act allows for injunctive relief, clearly implying that injury without monetary damages will suffice.

Nevertheless, Tampourlos argues that whatever injury which Nordstrom suffered was cured by the November 1981 ruling requiring Tampourlos to change the typeface and

add words to his styling salon. Tampourlos asserts that once his salon was called "Nostrum, the Styling Salon", no further injury to Nordstrom resulted. Thus, any attorney fees for Nordstrom should be reduced to account for only the injuries caused before this order was entered.

We disagree. A trial was held 1 year later which specifically found that the Tampourlos salon name, then "Nostrum, the Styling Salon", constituted an impermissible trade name infringement. The trial court stated that this infringement injured Nordstrom's business reputation and goodwill. The fourth prong of the *Hangman Ridge* test is met, and relates to the injury caused by Tampourlos' use of the name "Nostrum" for the entire period between its start and the trial court order enjoining its further use.

Finally the fifth part of the *Hangman Ridge* test requires a causal link between the violation of the Consumer Protection Act and the harm caused to the plaintiff. Here, there is no doubt that Tampourlos' conduct of infringing the trade name of Nordstrom caused Nordstrom's injury. This element is satisfied.

### Public Interest Requirement

This court also required in *Hangman Ridge* that private plaintiffs make a showing of public interest. *Hangman Ridge,* at 787. Prior to this decision, this showing was made by meeting a 3–prong test described in *Anhold v. Daniels,* 94 Wn.2d 40, 614 P.2d 184 (1980). The test in *Anhold,* however, was modified by the decision in *Hangman Ridge.*

The new test requires a court to determine whether the case was more properly characterized as a consumer dispute or a private dispute. Once this determination is made, the *Hangman Ridge* decision proposes a number of nonexclusive questions which should be asked to determine whether these facts involved give rise to a Consumer Protection Act violation. *Hangman Ridge,* at 790–91. Not all the questions necessarily require the same answer to find a violation has occurred.

This distinction between consumer and private disputes

is very useful in the vast majority of Consumer Protection Act cases. Typically, these cases involve disputes between a purchaser of goods and a seller, *see, e.g., Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 649 P.2d 828 (1982), or disputes between an individual paying for services and the party rendering them. *See, e.g., Short v. Demopolis,* 103 Wn.2d 52, 691 P.2d 163 (1984); *Hangman Ridge.* When this type of case appears, the procedure set forth in *Hangman Ridge* is an excellent vehicle for determining whether the public interest requirement is met.

However, in the subject case, it is clear that such a neat distinction between consumer and private disputes is not workable. The Court of Appeals was clearly correct in its opinion when it stated that "[t]he thrust of this litigation is a private dispute between two parties over trade name infringement." *Nordstrom, Inc. v. Tampourlos,* 43 Wn. App. 370, 377, 717 P.2d 293, *review granted,* 106 Wn.2d 1001 (1986). Equally true, however, is that the public was integrally involved because of this essentially private dispute. The trial court in its findings of fact stated that Tampourlos' use of the name Nostrum "tends to and does deceive or mislead persons of ordinary caution into the belief that they are dealing with one concern when in fact they are dealing with the other." Finding of fact 11.

In decisions prior to the public interest requirement set forth in *Anhold* and *Lightfoot v. MacDonald,* 86 Wn.2d 331, 544 P.2d 88 (1976), we had described trade name infringement cases as falling within the ambit of the Consumer Protection Act. *See Tradewell Stores, Inc. v. T.B. & M., Inc., supra; Wine v. Theodoratus, supra.* We believe these cases were correctly decided. While we have eschewed the use of judicially created per se violations of the Consumer Protection Act in *Hangman Ridge,* we nevertheless recognize that certain acts, by their very nature, must fulfill certain prongs of the *Hangman Ridge* test.

█ This is true of the typical trade name infringement case. A necessary component of trade name infringement is that the plaintiff must establish that the name used is

likely to confuse the public. *See, e.g., International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912 (9th Cir. 1980); *Wine v. Theodoratus, supra.* This confusion of the public, absent some unusual or unforeseen circumstances, will be sufficient to meet the public interest requirement of the Consumer Protection Act. We emphasize that this is not a per se rule, but rather a function of what we perceive as the overlapping nature of proof in both trade name infringement cases and Consumer Protection Act violations.

## ATTORNEY FEES

The relevant part of RCW 19.86.090 states that a successful plaintiff in a Consumer Protection Act case can "recover the actual damages sustained by him . . . together with the costs of the suit, including a reasonable attorney's fee . . ." Nordstrom has submitted an affidavit claiming that this fee exceeds $40,000. We believe this is a grossly exaggerated amount and remand to the trial court to determine what constitutes a reasonable award.

Nordstrom has attempted to collect a substantial amount for costs, including photocopying and telephone expenses. We believe this is not recoverable as "costs" and can only be recovered to the extent that it would be included in a reasonable attorney fee. Costs have historically been very narrowly defined, and RCW 4.84.010, which statutorily defines costs, limits that recovery to a narrow range of expenses such as filing fees, witness fees, and service of process expenses. We believe it gives the plaintiff in a Consumer Protection Act action an unwarranted recovery to extend costs beyond those statutorily defined in RCW 4.84.010. We therefore remand the case to the trial court to determine which costs should be allowed.

Furthermore, a number of issues were litigated at trial and on appeal besides the Consumer Protection Act violation. Tampourlos had brought an action against Nordstrom for its alleged breach of the lease, and there were claims of damaged equipment and property from both sides. It again

would give Nordstrom an unfair benefit to award it attorney fees for these aspects of the suit, when they had nothing to do with Consumer Protection Act violations.

Finally, the determination of what constitutes reasonable attorney fees should not be accomplished solely by reference to the number of hours which the law firm representing the successful plaintiff can bill. In a case such as this one, in which settled case law indicated that an unfair trade name infringement constitutes a Consumer Protection Act violation, there is a great hazard that the lawyers involved will spend undue amounts of time and unnecessary effort to present the case. Therefore, the trial court, instead of merely relying on the billing records of the plaintiff's attorney, should make an independent decision as to what represents a reasonable amount for attorney fees. The amount actually spent by the plaintiff's attorney may be relevant, but it is in no way dispositive.

## CONCLUSION

Tampourlos' use of "Nostrum, the Styling Salon" constituted an unfair trade name infringement and violated the Consumer Protection Act. Nordstrom is entitled to statutorily defined costs and reasonable attorney fees. These fees should only represent the reasonable amount of time and effort expended which should have been expended for the actions of Tampourlos which constituted a Consumer Protection Act violation.

PEARSON, C.J., UTTER, DOLLIVER, CALLOW, GOODLOE, and DURHAM, JJ., and WILLIAMS, J. Pro Tem., concur.

ANDERSEN, J., concurs in the result.