[No. 60137-2.    En Banc.    February 24, 1994.]

SEATTLE ENDEAVORS, INC., ET AL, *Respondents*, v. MICHAEL R. MASTRO, ET AL, *Petitioners*.

340

*John F. Sherwood,* for petitioners.

*Ray Siderius* and *C.R. Lonergan, Jr.* (of *Siderius Lonergan*), for respondents.

UTTER, J. — Michael Mastro and Paul and Barbara Stephanus appeal a Court of Appeals decision reversing a judgment in their favor in an action brought by Carroll Duval and Seattle Endeavors, Inc., to enjoin the infringement of a trade name. At issue is whether the Court of Appeals properly ruled that petitioners should be enjoined from making use of the name in question and whether the court properly awarded respondents attorney fees under the Consumer Protection Act. Respondents request an award of attorney fees for answering this petition.

The relevant facts are undisputed. In 1974, Carroll Duval bought a 20-unit apartment complex called "The Willows Apartments", located in the Lake City area of Seattle. The following year Duval incorporated Seattle Endeavors to own and operate the complex.[1] In February 1988, Duval registered the name "The Willows Apartments" with the Department of Licensing.

---

[1]Duval and Seattle Endeavors, Inc., will be referred to collectively as "Duval".

Meanwhile, three blocks from Duval's complex, Michael Mastro built a 104-unit complex and called it "The Willows Apartments". Mastro was unaware of the existence of Duval's complex when he built, named, and advertised his own complex. He began renting units in 1987. In February 1988, Mastro sold the complex to Paul and Barbara Stephanus.

On June 3 of that year, Duval sued Mastro and the Stephanuses for trade name infringement, seeking to enjoin their use of the name "The Willows Apartments".[2] Duval also sought attorney fees and costs. At trial, the evidence revealed numerous incidents of public confusion over the two apartment complexes: a parcel intended for Stephanus's complex was delivered to Duval's; a soda machine intended for Stephanus's complex was delivered to Duval's; a glass repairer went to Duval's complex to make a repair requested by Stephanus; an applicant for a rental agent position at Stephanus's complex went to Duval's; and prospective tenants responding to Duval's advertisements went to Stephanus's complex.

The trial court found the use of identical names confused the public. Clerk's Papers, at 23. Nevertheless, the court concluded Duval was not entitled to injunctive relief because he had not first appropriated the name "Willows" or "Willows Apartments" in the Seattle area and the name is not unique or distinctive. Clerk's Papers, at 22-23. Stephanus informed the court he was attempting to secure rights to use the name "Willows Court". The court indicated that although it was not ordering Stephanus to change the name of his complex, the use of "Willows Court" or some other reasonably distinctive name "would alleviate to mutual advantage any confusion of the public and would be consistent with the existing community practice." Clerk's Papers, at 23-24. Following trial, Stephanus changed the name of his complex to "Willows Court".

The Court of Appeals reversed the trial court's denial of injunctive relief, holding that Duval had established a right

---

[2]Mastro and the Stephanuses will be referred to collectively as "Stephanus".

to injunctive relief for trade name infringement. The Court of Appeals reasoned that the name "Willows Court" did not provide sufficient relief under the circumstances, and directed the trial court to enter an injunction prohibiting Stephanus from using "Willows" altogether. The court also concluded Duval was entitled to reasonable attorney fees under the Consumer Protection Act, both at trial and on appeal. Stephanus now appeals to this court.

The record establishes the existence of a number of apartment complexes in Seattle using the word "Willows". The Seattle Yellow Pages, for example, lists Willow Brook, Willow Crest, Willow Glen, Willow Lake, Willowbrook, Willowmoor, and Willow Townhouses. See Report of Proceedings, at 86; see also Defendant's exhibits 47, 50. The record also indicates it is not uncommon for apartment houses to have similar names. The same Yellow Pages, for example, lists the following apartments: Benson Crest, Benson East, Benson Estate, Benson Hill, and Benson Village. See Defendant's exhibits 47, 50.

Stephanus now concedes that Duval is entitled to injunctive relief, but takes issue with the *scope* of relief ordered by the Court of Appeals. He maintains the Court of Appeals' determination that Stephanus should be enjoined from using the term "Willows" altogether is too broad given the weakness of Duval's trademark interest in that word.

■ Stephanus does not assign error to the conclusion by the Court of Appeals that an injunction is appropriate. Therefore the threshold question whether Duval is entitled to an injunction is not before the court. It is nevertheless essential to evaluate the initial strength of Duval's interest in the name "Willows Apartments" because the proper scope of injunctive relief is integrally related to the strength of the mark under trademark law. *See* 1 *McCarthy on Trademarks and Unfair Competition* § 11.24, at 11-124 (3d ed. 1992) (hereinafter McCarthy); *see generally* McCarthy § 11.

We begin with a discussion of basic trademark principles to facilitate our discussion of the merits of the parties' arguments.

I

## Trademark Law: Some General Principles

Trademarks, including names, fall generally into two broad categories, inherently distinctive marks and noninherently distinctive marks. *See* McCarthy § 11.01, at 11-4. Within those broad categories, marks fall along a spectrum of distinctiveness which determines whether the marks are eligible for trademark protection at all, and if so, what the appropriate scope of that protection should be. *See* McCarthy § 11.24, at 11-124. In other words, the strength of the trademark interest in a given word informs the scope of injunctive relief which may properly be ordered. *See generally* McCarthy §§ 11.24, 11.25.

Arranged from least to most appropriable, these subcategories are: (1) generic terms; (2) descriptive terms; (3) suggestive terms; and (4) arbitrary or fanciful terms.[3] *See* McCarthy, at 11-5.

Fanciful, arbitrary and suggestive marks are considered "inherently distinctive" and as such are deemed, at least presumptively, to be "strong" marks in the sense they enjoy a broad scope of judicial protection against infringement. *See* McCarthy § 11.24, at 11-124. Descriptive terms, on the other hand, are more difficult to protect as trademarks because they may already be in use in similar fields and thus not be very "distinctive" at all. In this sense they are "weak". McCarthy § 11.24, at 11-129. *See, e.g., Zebra Distrib. Co. v. Ace Fireworks, Inc.*, 75 Wn.2d 326, 328, 450 P.2d 962 (1969).

Locating the mark on the spectrum of distinctiveness does not end the inquiry as to its strength. It is only the first step of the analysis. The second is determining the strength of the mark in the marketplace, *i.e.*, the extent to which the mark is effective in distinguishing the product or service

---

[3]An arbitrary mark is a word or symbol commonly used in the language, but which is neither descriptive of the goods or services in question nor suggests their quality. *See* McCarthy § 11.03, at 11-14 through 11-15; § 11.05, at 11-19 through 11-25. A fanciful mark is one which uses a word which is either totally unknown or unused in the language, and is selected for the sole purpose of identifying a good or service. *See* McCarthy § 11.03, at 11-10 through 11-11.

from others in the relevant area. *See* McCarthy § 11.01, at 11-6 through 11-7. Thus, a word may be arbitrary or fanciful, and therefore distinctive at the outset of the analysis, yet ultimately prove to be a "weak" mark in the sense that it is not particularly effective in distinguishing the product or service from others. *See* McCarthy, at 11-6 through 11-7. Although weak marks are entitled to some protection, the protection they are afforded is commensurately narrow. *See* McCarthy, at 11-124.

In view of the general principles just discussed, it is possible to arrive at the following conclusions: The word "Willow" is an arbitrary term to designate an apartment complex, and as such is appropriable, at least as a preliminary matter. That is only the first step, however. The significant number of apartment houses in the Seattle area including "Willows" in their name, and the uncontested fact that apartment houses often bear like names, indicate the interest is weak, and therefore not entitled to the absolute protection the Court of Appeals ordered.

The analytical framework described above operates tacitly in Washington trademark cases, and supports our conclusion that trademark protection is warranted on this record, but of a limited scope only.

## II

### Trademark Law In Washington

■ Under Washington law, a plaintiff in a trade name infringement case must establish the defendant has infringed on a distinctive feature of his name in a manner that tends to confuse the two businesses in the public mind. *Seattle St. Ry. & Mun. Employees Relief Ass'n v. Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees*, 3 Wn.2d 520, 532, 101 P.2d 338 (1940) and cases cited therein. *See also Money Savers Pharmacy, Inc. v. Koffler Stores (Western) Ltd.*, 37 Wn. App. 602, 606-07, 682 P.2d 960 (1984); *Puget Sound Rendering, Inc. v. Puget Sound By-Products*, 26 Wn. App. 724, 728, 615 P.2d 504 (1980).

■ The determination of infringement is to be made in view of the following principles:

"*First*: The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business."

"*Second*: A person, whether individual or corporate, may not use any name, not even his or its own, which is the distinctive feature of a trade name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other."

"*Third*: The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator."

"*Fourth*: To acquire the right to use a particular name, it is not necessary that the name be used for any considerable length of time. It is enough to show that one was in the actual use of it before it was begun to be used by another."

"*Fifth*: A trade name may be abandoned or given up by the original appropriator, and, when it is so abandoned or given up, any other person has the right to seize upon it immediately, and make use of it, and thus acquire a right to it superior not only to the right of the original user, but of all the world."

"*Sixth*: A trade name, in order to be an infringement upon another, need not be exactly like it in form and sound. It is enough if the one so resembles another as to deceive or mislead persons of ordinary caution into the belief that they are dealing with the one concern when in fact they are dealing with the other."

"*Seventh*: The rule is no different when the name, or some part thereof, is a geographical name, or contains descriptive words which have acquired a secondary meaning."

"*Eighth*: Prior right to the use of a name will be protected by injunction against others using it unfairly."

(Italics ours.) *Holmes v. Border Brokerage Co.*, 51 Wn.2d 746, 750-51, 321 P.2d 898 (1958) (quoting *Foss v. Culbertson*, 17 Wn.2d 610, 624-25, 136 P.2d 711 (1943)), *cited in Wine v. Theodoratus*, 19 Wn. App. 700, 701-04, 577 P.2d 612 (1978); *see also Seattle St. Ry. & Mun. Employees Relief Ass'n v. Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees*, 3 Wn.2d 520, 101 P.2d 338 (1940); *Foss v. Culbertson, supra*; *Money Savers Pharmacy, Inc. v. Koffler Stores (Western) Ltd.*, 37 Wn. App. 602, 606-07, 682 P.2d 960 (1984).

As this list indicates, the analysis whether a particular word is appropriable and thus a proper subject of injunctive relief does not produce results of mathematical certainty. A preeminent scholar of trademark law explains, "[a]s with tonal shade variations in the colors of the visible spectrum of sunlight, the categories of the trademark spectrum often become difficult to distinguish at the boundaries." (Footnote omitted.) 1 *McCarthy on Trademarks and Unfair Competition* § 11.01, at 11-5 (3d ed. 1992). *See also* McCarthy, at 11-115 through 11-116: "the descriptive-suggestive dichotomy . . . [is not] some kind of concrete and objective classification system. It is no more objective and free of personal predilections than a test which asks persons to divide all color shades into 'light' and 'dark.' "

These reservations aside, we conclude on this record that Duval did have a protected interest in the word "Willows": "Willows" is an arbitrary word to designate an apartment complex; as between the two parties, it is uncontested that Duval was the longstanding prior user; and, the trial court found the similarity of names within a 3-block radius engendered confusion. On the whole, then, absent evidence of abandonment by Duval, which Stephanus does not allege, the word is entitled to some degree of trademark protection.

Duval maintains this case is like *Martell v. St. Francis Hotel Co.*, 51 Wash. 375, 98 P. 1116 (1909). There, this court decided an injunction was proper against an infringer where two hotel owners operated within four blocks of one another and used a similar name. The plaintiff used the name Hotel Saint Francis. Subsequently the defendant opened a similar establishment under the name St. Francis Hotel. Although no intentional deception on the part of the defendant was found, the court held it was proper to enjoin the subsequent user from using the name "Saint Francis". What makes *Martell* different from this case, however, is that in *Martell* there was no evidence the name was used by others in the area. Here, such evidence exists, making Duval's interest in the word "Willows" weak, and as such, entitled only to limited protection.

## III

### DETERMINING THE APPROPRIATE SCOPE OF INJUNCTIVE RELIEF

■ The proper approach to evaluating the scope of injunctive relief for trademark infringement has been developed primarily by the Court of Appeals, which views the following considerations as relevant:

> (1) whether the trade name was vaguely descriptive or clearly nondescriptive, *i.e.*, the "appropriability" of the name; (2) the originality of the name; (3) whether or not the defendant acted in good faith; and (4) the extent of competition between plaintiff's and defendant's businesses.

*Puget Sound Rendering, Inc. v. Puget Sound By-Products*, 26 Wn. App. 724, 729, 615 P.2d 504 (1980), *cited with apparent approval in Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Bank*, 98 Wn.2d 853, 862 n.3, 659 P.2d 481 (1983). *See also Tradewell Stores, Inc. v. T.B.&M., Inc.*, 7 Wn. App. 424, 500 P.2d 1290 (1972). This approach is consistent with the notion in trademark law that injunctive relief should be fashioned in light of the trademark's strength. *See generally* McCarthy § 11.

■ We conclude that Duval is entitled to some relief, regardless of Stephanus's good faith, because the businesses operate in close proximity to one another and the record establishes public confusion. However the number of apartment houses in the Seattle area using "Willow", and the evidence in the record that it is common for apartment houses to have similar names, significantly dissipates the strength of Duval's interest, making it a "weak" mark. Although "Willows Apartments" may have been initially appropriable and entitled to broad trademark protection, its use by others in the general area makes it a weak mark, entitled instead to limited protection. For this reason, the Court of Appeals' conclusion that Stephanus should be enjoined from using the term "Willows" altogether is not supportable. This is especially true in view of the trial court's express finding that some distinctive alternative, such as "Willows Court", would sufficiently dispel the public confusion.

For the foregoing reasons, we reverse the Court of Appeals and remand the case to the trial court for a formal[4] entry of judgment as to whether the name "Willows Court" sufficiently alleviates the confusion, and enjoining Stephanus from continuing to use the "Willows Apartments".

## IV

### ATTORNEY FEES FOR VIOLATION OF THE CONSUMER PROTECTION ACT

Stephanus correctly maintains the Court of Appeals erred in concluding Duval is entitled to attorney fees under the Consumer Protection Act (the Act). The Act provides for the award of attorney fees, *see* RCW 19.86.090, and declares:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

RCW 19.86.020.

■ This court requires a private party to show the following five elements to establish a violation of the Act: (1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring the plaintiff's business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 739, 733 P.2d 208 (1987) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). *See also Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 57, 785 P.2d 815 (1990); *Eriks v. Denver*, 118 Wn.2d 451, 824 P.2d 1207 (1992).

Duval maintains that *Nordstrom* has already established that trademark infringement satisfies the public interest requirement under RCW 19.86.020. That is an oversimplification of *Nordstrom*. It is true the opinion opens with the statement:

---

[4]The trial court did indicate that Stephanus's proposed change of name to "Willows Court" would alleviate the confusion. However because it ordered no injunction, this statement is without legal effect, and provides Duval no legal protection.

> We are asked to decide whether a trade name infringement constitutes a Consumer Protection Act violation justifying the award of attorney fees and expenses. We hold that it does, and reverse the Court of Appeals decision denying Nordstrom reasonable attorney fees.

*Nordstrom*, 107 Wn.2d at 737.

Yet a close examination of the case reveals this to be only a general description of what is actually a carefully delimited holding. In *Nordstrom* we expressly stated we were not deciding that trademark infringement *necessarily* establishes a violation, only that it *can*.

> While we have eschewed the use of judicially created per se violations of the Consumer Protection Act in *Hangman Ridge*, we nevertheless recognize that certain acts, by their very nature, must fulfill certain prongs of the *Hangman Ridge* test.
>
> This is true of the typical trade name infringement case. A necessary component of trade name infringement is that the plaintiff must establish that the name used is likely to confuse the public. . . . This confusion of the public, *absent some unusual or unforeseen circumstances*, will be sufficient to meet the public interest requirement of the Consumer Protection Act. **We emphasize that this is not a per se rule**, but rather a function of what we perceive as the overlapping nature of proof in both trade name infringement cases and Consumer Protection Act violations.

(Italics and boldface ours.) *Nordstrom*, 107 Wn.2d at 742-43.

■ The trademark interest infringed in *Nordstrom* is significantly different from the one at issue here. "Nordstrom" is a distinctive name and therefore presumptively appropriable. Unlike "Willows Apartments", however, it is a "strong" mark because it is closely associated with the business it designates. Moreover, intentional infringement was apparent on the facts of that case. Here, although "Willows" is an arbitrary term, the record establishes it is a "weak" mark, and the trial court found that Stephanus acted without improper intent. We therefore hold that the *inadvertent* infringement of a *weak* mark is not sufficient to qualify as a public interest for the purpose of awarding attorney fees under the Consumer Protection Act.

Because no cognizable public interest is established where the mark is weak and the infringement inadvertent,

the plaintiff has failed to establish all five elements of the Act. The Court of Appeals' award of fees is therefore improper, and accordingly, reversed.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.