**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| SCHEFFER HOLDINGS, LLC, a Washington State limited liability company; and ROVER STAY OVER, INC., a Washington State corporation,<br><br>Appellants,<br><br>v.<br><br>ROBERT STERNHAGEN and SANDEE STERNHAGEN, in their individual and marital capacity; RIEKER STERNHAGEN and MELISSA STERNHAGEN, in their individual and marital capacity; and R&R KENNELS LLC, a Washington State limited liability company,<br><br>Respondents. | No. 87012-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Scheffer Holdings, LLC, and its company, Rover Stay Over, Inc. (collectively Rover), sued a competitor kennel operation, R&R Kennels (R&R), after U.S. Customs and Border Protection (CBP) awarded a competitive contract to R&R for kenneling border protection dogs. Rover's complaint sought declaratory and injunctive relief, claimed tortious interference with business relations, and claimed violations of Washington's Consumer Protection Act (CPA), ch. 19.86 RCW. Rover appeals the trial court's summary judgment dismissal of its complaint.

We affirm.

I

Scheffer Holdings LLC, owns property in Lynden, Washington, on which it operates its dog kenneling business, Rover.  The property is zoned "agriculture."  When Rover began operations, it did not have the land use permits necessary for a kennel, but Rover worked with Whatcom County to obtain the permits while still operating the business.

Rieker and Melissa Sternhagen own and operate R&R, a competing dog kenneling business, in Bellingham, Washington.[1]  When R&R opened in 1983, the property was zoned "general protection."  At the time, a land use permit was not required to operate a commercial kennel in the general protection zone.  In 1984, the property was rezoned to a rural land use designation, which required a conditional use permit (CUP) for commercial kennels.  In 1995, Whatcom County conditionally approved R&R's application for a CUP but imposed several conditions to be met before the CUP would be granted.

Before 2020, Rover held a contract with CBP to provide kenneling services to CBP's dogs.  In July 2020, the contract expired and CBP opened a bidding process for a new contract.  There were at least three bids, including bids from both R&R and Rover.  CBP awarded the contract to R&R, and R&R began kenneling CBP dogs under the contract in November 2020.[2]

---

[1] For clarity, we refer to the appellants collectively as "Rover" and the respondents as "R&R."
[2] That contract expired, after three annual option renewals, in November 2024.

Rover filed a bid protest in the U.S. Government Accountability Office (GAO) contending that R&R was ineligible for the contract because it did not have a CUP. The GAO dismissed the protest and denied reconsideration.

Rover then sued R&R in Whatcom County Superior Court. In its initial complaint, Rover sought declaratory and injunctive relief asserting that R&R did not have the necessary land use permits to provide commercial kenneling services in general, and particularly kenneling services to CBP. Both parties moved for summary judgment. The trial court granted summary judgment to R&R. Rover then successfully amended its complaint, adding claims for violation of the CPA and tortious interference with business relations. The parties again cross-moved for summary judgment. The trial court granted summary judgment to R&R and dismissed all of Rover's claims.

Rover appeals.

II

Rover argues that the trial court erred when it concluded that Rover did not have standing to seek declaratory and injunctive relief.

A

The Uniform Declaratory Judgments Act (UDJA), ch. 7.24 RCW, gives the court authority to declare the rights, status, and other legal relations of the parties. RCW 7.24.010. The purpose of declaratory judgment is to settle and provide relief relating to uncertainty regarding the rights of parties under a statute, contract, or ordinance. RCW 7.24.020.

Declaratory judgment is appropriate when the following four elements of a justiciable controversy are present:

> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

Osborn v. Grant County By & Through Grant County Comm'rs, 130 Wn.2d 615, 631, 926 P.2d 911 (1996) (quoting Ronken v. Bd. of County Comm'rs, 89 Wn.2d 304, 310, 572 P.2d 1 (1977)).

Standing under the UDJA, "is not intended to be a particularly high bar. Instead, the doctrine serves to prevent a litigant from raising another's legal right." Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund, Inc., 193 Wn.2d 704, 712, 445 P.3d 533 (2019). The UDJA is liberally construed and administered. Osborn, 130 Wn.2d at 631.

We follow a two-prong standing test to establish whether a party's "rights, status or other legal relations are affected by a statute." RCW 7.24.020; Wash. State Hous. Fin. Comm'n, 193 Wn.2d at 711. First, we determine "whether the interest sought to be protected is arguably within the zone of interests to be protected or regulated by the statute." If that prong is met, then we determine whether the challenged action has caused injury in fact. Wash. State Hous. Fin. Comm'n, 193 Wn.2d at 711-12.

When evaluating the first prong—whether the interest is within the zone interest protected by a statute or ordinance—we refer to both the general purpose of the statute and the operation of the statute. Five Corners Fam. Farmers v. State, 173 Wn.2d 296, 304-05, 268 P.3d 892 (2011). We rely on the same principles of statutory interpretation when interpreting the meaning of an ordinance. Ellensburg Cement Prods., Inc. v. Kittitas County, 179 Wn.2d 737, 743, 317 P.3d 1037 (2014). We first look to the plain

language. "Absent ambiguity or a statutory definition, we give the words in a statute their common and ordinary meaning." HomeStreet, Inc. v. State, Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). If the language of an ordinance is ambiguous, "the section under construction should be read in context with the entire act and a meaning ascribed to it that avoids strained or absurd consequences." Standing v. Dep't of Lab. & Indus., 92 Wn.2d 463, 474, 598 P.2d 725 (1979).

B

Rover first argues that it has standing under Whatcom County Code (WCC) 20.94.080(3). We disagree.

WCC 20.94.080(3) provides:

In addition to the civil remedies imposed above, the county or the owner or owners of land affected by violations of the provisions of this title may bring such injunctive, declaratory or other actions as deemed necessary to ensure that violations are prevented or cease, and to otherwise enforce the provisions of this title.

(Emphasis added.) The stated purpose and intent of the WCC zoning code is to:

further the goals and policies of the Whatcom County Comprehensive Plan by providing the authority for and procedures to be followed in regulating the physical development of Whatcom County, through coordinating the execution of both public and private projects with respect to all subject matters utilized for developing and servicing land. The objective of this title is to assure the highest standards of environment for living, and the operation of commerce, industry, agriculture and recreation; and to assure maximum economies in order to conserve the highest degree of public health, safety, morals and welfare.

WCC 20.04.020.

The WCC does not define "land affected" as used in WCC 20.94.080(3). Rover argues that it has standing under WCC 20.94.080(3) because its land is affected

because its income stream for its property is damaged as a result of R&R's failure to have a CUP. We disagree.

"Land affected" cannot be read so broadly as to mean businesses that are impacted because another landowner failed to obtain a permit under the WCC. Rover's reading of the statute would allow a business to bring litigation against a competitor any time there was a zoning issue. For example, if Rover moved its kenneling operation to an entirely different location—including an adjacent county—its business impacts would be the same, regardless of where its operation was physically located. This shows that it is not the "land affected" but their business, which is not the purpose of the County's zoning code. Rover's position creates a strained and absurd outcome and could not have been the intent of WCC 20.94.080(3).

Rover is also not within the zone of interest of the statute. The enforcement provision authorizes owners of the "land affected" by violations to bring an action. Rover relies on the purpose and intent language in WCC 20.04.020 that states the "objective of this title is to assure the highest standards of environment for living, and the operation of commerce, industry, agriculture and recreation; and to assure maximum economies." WCC 20.04.020. But the sentence immediately before states the purpose of this code is to provide "the authority for and procedures to be followed in regulating the physical development of Whatcom County." (Emphasis added.) The provision as a whole demonstrates that it is intended for the physical development of the land and owners of land who are affected by those physical developments.

Lastly, Rover asserts that a mere financial interest in the outcome of a declaratory action has standing. Rover relies on American Traffic Solutions, Inc. v. City

of Bellingham, 163 Wn. App. 427, 260 P.3d 245 (2011). There, American Traffic Solutions (ATS) contracted with the city to install a traffic safety camera system, and it filed suit to challenge a ballot initiative that would prohibit such a system. Am. Traffic Sols., 163 Wn. App. at 430. As the court held, ATS had standing because the initiative would require cancellation of its contract and cause economic harm. Am. Traffic Sols., 163 Wn. App. at 433.

Contrary to Rover's contention, American Traffic Solutions does not stand for the broad proposition that a mere financial interest constitutes injury in fact. Rather, in that case, the plaintiffs would have suffered concrete injury if the initiative passed because it held the contract to install the cameras. Here, there is no guarantee that Rover would have been awarded the contract if R&R was to cease operations—there were at least three bids submitted for the CBP contract. Similarly, there is no guarantee that if R&R were to cease operations, it would remedy any alleged injury.

C

Rover next argues it independently has standing to object to R&R's operation as a direct competitor. We disagree.

Rover relies on Day v. Inland Empire Optical, Inc., 76 Wn.2d 407, 456 P.2d 1011 (1969). There, a group of ophthalmologists sought an injunction against a separate group of ophthalmologists for violating a statute that prohibited doctors from receiving compensation for referrals. Day, 76 Wn.2d at 409. The defendants asserted that the complaining doctors did not have standing to seek an injunction. Day, 76 Wn.2d at 409. The Washington Supreme Court held:

> [O]ne lawfully engaged in the practice of a <u>licensed profession has a legal and equitable right to insist that others practicing abide by the ethical standards and comply with the laws governing the practice</u>; that violations, either of the ethics or laws governing the practice of the profession amount to an invasion of that right; and that a breach of ethics or violations of the laws by either licensed or unlicensed persons practicing the profession constitutes actual and substantial injury to others in the profession for which injury the courts will provide redress.

<u>Day</u>, 76 Wn.2d at 417.  (Emphasis added.)

<u>Day</u> does not apply.  First, the holding in <u>Day</u> is limited to licensed professions and laws that govern the practice.  Rover acknowledges that kenneling services are not a regulated industry.  Second, <u>Day</u> provides for an equitable right to insist others practicing the profession abide by the ethical standards and laws governing the practice.  The WCC zoning code does not govern the practice of operating a kenneling business.

We agree with the trial court that Rover did not have standing to seek declaratory or injunctive relief.  The trial court did not err in dismissing these claims.

IV

Rover argues that the trial court erred in dismissing its CPA claim on summary judgment.  We disagree.

We review summary judgment orders de novo, engaging in the same inquiry as the trial court.  <u>Marquis v. City of Spokane</u>, 130 Wn.2d 97, 104-05, 922 P.2d 43 (1996).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  CR 56(c).

Washington's CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. The plaintiff must prove "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

Rover argues that, although it is a private dispute, the public interest element is nonetheless met because a fact finder could conclude that R&R's unauthorized commercial kennel operation deceives the public into believing that it is a fully permitted and legal operation. We disagree.

To establish the public interest element of a CPA claim, the court considers: "(1) whether the acts were committed in the course of defendant's business, (2) whether the defendant advertised to the public, (3) whether the defendant actively solicited the plaintiff, and (4) whether the parties occupied unequal bargaining positions." Falcon Props. LLC v. Bowfits 1308 LLC, 16 Wn. App. 2d 1, 13, 478 P.3d 134 (2020). In a private CPA action, "it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." Hangman Ridge, 105 Wn.2d at 790.

Rover relies on Nordstrom, Inc. v. Tampourlos, 107 Wn.2d 735, 733 P.2d 208 (1987). In that case, the issue was whether a trademark infringement constitutes a violation of the consumer protection act. Nordstrom, 107 Wn.2d at 740. In the analysis of the public interest requirement, the court held:

> A necessary component of trade name infringement is that the plaintiff must establish that the name used is likely to confuse the public. This confusion of the public, absent some unusual or unforeseen circumstances, will be sufficient to meet the public interest requirement of the Consumer Protection Act. We emphasize that this is not a per se rule, but rather a function of what we perceive as the overlapping nature of proof in both trade name infringement cases and Consumer Protection Act violations.

Nordstrom, 107 Wn.2d at 742-43 (citations omitted).

Nordstrom is distinguishable. First, the court explicitly stated that its holding is a not per se rule but a function of trademark infringement cases. This is not a trademark infringement case. Second, Rover fails to point to any case, other than trademark infringement, where there is a bright line rule that confusion of the public is sufficient to meet the public interest requirement.

Additionally, Rover cannot establish as a matter of law that other potential plaintiffs have been or will be harmed in the same fashion. Although the alleged deceptive or unfair conduct took place in the course of R&R's business, and was advertised to the public, R&R did not solicit Rover and the parties do not occupy unequal bargaining positions. This is a dispute between two competing businesses that arose because one party did not win a competitive government contract. Rover cannot establish that any alleged harm would be suffered by other plaintiffs. This is not the type of action that impacts public interest.

Because Rover cannot establish the public interest element of the CPA claim, the trial court did not err in dismissing the claim.

V

Rover argues the trial court erred in dismissing its claim for intentional interference with business expectancy. We disagree.

To establish intentional interference with business expectancy, the plaintiff must show "'(1) the existence of a . . . [valid] business expectancy; (2) that [the defendant] had knowledge of that [expectancy]; (3) an intentional interference inducing or causing . . . termination of the . . . expectancy; (4) that [the defendant] interfered for an improper purpose or used improper means; and (5) resultant damage.'" Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 768, 436 P.3d 397 (2019) (alteration in original) (quoting Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 350, 144 P.3d 276 (2006)).

Rover first argues that R&R used an improper means to bid on a contract because it did not have the necessary land use permits. We disagree. "Tortious interference through improper means 'arises from . . . the defendant's . . . use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships.'" Greensun, 7 Wn. App. 2d at 754 (quoting Pleas v. City of Seattle, 112 Wn.2d 794, 803-04, 774 P.2d 1158 (1989)). To prove improper means, the plaintiff must establish that the defendant had a duty not to interfere, which may be established by statute, regulation, common law, or a standard of the trade or profession. Greensun, 7 Wn. App. 2d at 773.

Rover cannot establish that R&R acted with improper means. Rover does not identify any statute that prohibits R&R from bidding on a contract unless they have the necessary land permits. There is no duty of noninterference. R&R had no legal duty to

-11-

not submit a bid on an open government contract. Similarly, Rover had no legal right to the contract. There was therefore no improper interference.

We affirm.[3]

_Mann, J._

WE CONCUR:

_Díaz, J._

---

[3] Rover asserts that the case is moot because CBP awarded the contract to Rover during the pendency of the appeal. But because Rover's complaint sought declaratory relief surrounding all of R&R's operations, not only services to CBP, the matter is not moot.