**CONVERSIVE, INC. Plaintiff,**

v.

**CONVERSAGENT, INC., Defendant.**

**No. CV 05–01399SGLPLAX.**

United States District Court, C.D. California.

May 10, 2006.

James M. Burgess, Cal. Bar No. 151018, Janene P. Bassett, Cal. Bar No. 197722, Chad J. Levy, Cal. Bar No. 217637, Erica S. Alterwitz, Cal. Bar No. 240377, Sheppard Mullin Richter & Hampton LLP, Los Angeles, Kent E. Baldauf, Jr., John W. McIlvaine, Webb Ziesenheim Logsdon Orkin & Hanson, P.C., Pittsburgh, PA, for Plaintiff Conversive, Inc.

David S. Richman, Cal. Bar No. 94325, Patricia Riordan, Cal. Bar No. 187418, Stephan, Oringher, Richman, Theodora & Miller, P.C., Los Angeles, CA, Jess M. Collen, Matthew C. Wagner, Thomas Gulick, Collen IP, Ossining, NY, for Defendant Conversagent, Inc.

## ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT; ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION.

LARSON, District Judge.

This matter is before the Court on plaintiff's Motion for Partial Summary Judgment, and plaintiff's Motion for Preliminary Injunction. The matter was heard on May 1, 2006, and was taken under submission. For the reasons set forth below, the Court grants the Motion for Partial Summary Judgment, and the Court grants the Motion for Preliminary Injunction. Concurrently with this Order, the Court has entered plaintiff's proposed preliminary injunction.

### I.  Background

This action arises out of a dispute over the parties' trademarks. Plaintiff claims that defendant infringed upon its trademarks. Defendant contends that plaintiffs' trademarks are not protectable, and that it has senior rights to a similar mark.

Plaintiff brings the following claims: (1) Trademark infringement in violation of 15 U.S.C. § 1114(1) (§ 32(1) of the Lanham Act); (2) false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a) (§ 43(a) of the Lanham Act); (3) Trademark dilution in violation of 15 U.S.C. § 1125(c)(1) (§ 43(c)(1) of the Lanham Act); (4) California Trademark Dilution, Cal. Bus. & Prof.Code § 14330; (5) Common law unfair competition; and (6)

unfair competition pursuant to Cal. Bus. & Prof.Code § 17200 et seq.

In filing its Motion for Partial Summary Judgment, plaintiff seeks summary judgment in its favor as to its trademark infringement claim (first cause of action), its federal false designation of origin and unfair competition claim (second cause of action), and its California common law and statutory unfair competition claims (fifth and sixth causes of action).

Plaintiff also seeks a preliminary injunction the prohibits Defendant from using the mark CONVERSAGENT (or any other similar marks), from operating its web sites (conversagent.com, conversagent.net, conversagent.info, conversagent.biz), and from pursuing registration of the mark CONVERSAGENT (or any other similar marks).

The parties have submitted multiple volumes of evidence in support of and in opposition to the present motions. The parties have also filed numerous objections to the evidence. The Court notes its evidentiary rulings to several objections throughout the body of this Order. The Court rules on objections to evidence only to the extent that they address evidence that is material to the Court's present ruling.

## II. Summary Judgment Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude the use of summary judgment. *See Harper v. Wallingford*, 877 F.2d 728 (9th Cir.1989).

The Court construes all evidence and reasonable inferences drawn therefrom in favor of the non-moving party. *See Anderson*, 477 U.S. at 261, 106 S.Ct. 2505; *Brookside Assocs. v. Rifkin*, 49 F.3d 490, 492–93 (9th Cir.1995).

## III. Preliminary Injunction Standard

■ A preliminary injunction is an appropriate remedy in a case of trademark infringement when a plaintiff demonstrates either: (1) A combination of probable success on the merits and the possibility of irreparable injury; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in plaintiff's favor. *GoTo.com. Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204–05 (9th Cir.2000). Because irreparable harm is presumed when a trademark is infringed, a plaintiff asserting an infringement claim is ordinarily entitled to a preliminary injunction when it establishes a likelihood of confusion. *Vision Sports v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir.1989). In de-

termining whether there is a likelihood of confusion, the Ninth Circuit employs an eight-factor test: (1) Strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendants' intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979).

## IV. Uncontroverted Facts

### A. *History of the Businesses and Their Marks*

Plaintiff Conversive develops and sells computer software that allows for the interaction with data through the use of natural language. Conversive's software provides customer service mechanisms for use on web sites, which offer functionality that includes assisting users, answering questions, and providing information to users of web sites.

Conversive's EASYAGENT software provides automated answers to customer service inquiries using natural language processing. The questions and answers are displayed in a window on a computer screen. Conversive also has software with additional functionality that will refer a customer service inquiry to a live customer service representative when a question is not immediately answered by an automated response.

Since 2002, Conversive has used the CONVERSIVE mark in connection with all products offered by the company.[1] Non–Confidential Rappaport Decl. ¶ 4.

On September 5, 2002, plaintiff filed U.S. Trademark Application Serial No. 78/161,055 for the mark CONVERSIVE. Non–Confidential Williams Decl. ¶ 4. The CONVERSIVE mark was registered on June 15, 2004 as U.S. Registration No. 2,855,081. Pltf.'s SJ Ex. 15. The registration for the mark CONVERSIVE notes use in connection with "computer software for allowing web-based interaction, namely, instant messaging, electronic mail and wireless interactive messaging." *Id.* It notes a "first use" and a "first use in commerce" date of December 2002. *Id.*

Conversive owns U.S. Trademark Registration No. 3,000,964 for CONVERSIVE AGENT for "downloadable computer programs, namely an interactive natural language processing knowledge base used to build and customize interactive conversational mechanisms which assist, answer questions and provide information to customers via web sites, for use in real-time Internet relay communications platforms." Pltf.'s SJ Ex. 16. The registration notes a "first use" and "first use in commerce" date of December 2002. *Id.* Conversive also owns several other AGENT-formative trademarks for computer software for natural language applications, including EASYAGENT and INSTANTAGENT. Non–Confidential Williams Decl. ¶ 5.

Conversive markets its goods and services on the Internet and through telephone calls to potential customers. Non–Confidential Williams Decl. ¶ 9. Conversive's target customers are businesses with web sites continuously available to a large number of customers that have significant customer service needs. Non–Confidential Williams Decl. ¶ 7. Conversive's products have been used by companies such as Qan-

---

1. Defendant purports to dispute this fact; however, the evidence to which defendant cites does not controvert plaintiff's evidence on this point. *See* Statement of Genuine Issues at 4 (and evidence cited therein).

tas, Acura, NBC, elab and CNB.[2] Non–Confidential Rappaport Decl. ¶ 9; Non–Confidential Williams Decl. ¶¶ 8 and 10. Conversive is currently developing products for OnStar, General Motors, and others.[3] Non–Confidential Williams Decl. ¶ 6.

Defendant Conversagent "provide[s] conversational business solutions delivered over multiple messaging channels," and its software "engage[s] customers in typed natural language conversations, delivering answers to customers in real time." Pltf.'s SJ Ex. 8 at 67 (printouts of defendant's web site). Conversagent's software provides automated answers to customer service inquiries, and then, if the automated system does not adequately answer the customer's question, the software connects them to a customer service representative. Conversagent offers services including the development of custom interactive software and hosting services.

Conversagent markets its goods and services through various methods, including on the Internet and through telephone calls to potential customers. Klein Depo. 77–80 (attached as Pltf.'s SJ Ex. 4). Conversagent's customers and target customers are businesses having significant customer service needs with web sites continuously available to a large number of customers.

From March, 2000, until approximately December, 2003, defendant did business as ActiveBuddy. In 2000 and 2001, another company was using the Conversagent mark.

Erich Finkelstein founded Conversagent Canada Corporation (in Canada) in 2000 for the purpose of developing natural-language processing software intended to deliver responses to customer support questions on web sites. Finkelstein Depo. (Pltf.'s SJ Ex. 20) at 8. A related corporation, Conversagent Corporation,[4] was formed in New York; that corporation was "where the investment monies were put[, and] where the IP was held ...." *Id.* at 9.

On July 24, 2001, Conversagent Corporation filed a U.S. Trademark Application Serial No. 76/289,735 for CONVERSAGENT on an intent-to-use basis. Conversagent Corporations's intent-to-use U.S. Trademark Application Serial No. 76/289,-735 for CONVERSAGENT was abandoned on January 10, 2003, after Conversagent Corp. failed to submit evidence of use of the mark in commerce to the U.S. Patent and Trademark Office.

By December, 2001, Conversagent Corporation had no employees other than Finklestein. After December, 2001, Finklestein did not "ever contact any potential customers concerning the sale of a Conversagent product."[5] Finklestein Depo. at

---

**2.** Defendant purports to dispute this fact; however, the evidence to which defendant cites does not controvert plaintiff's evidence on this point. *See* Statement of Genuine Issues at 5 (and evidence cited therein).

**3.** Defendant purports to dispute this fact; however, the evidence to which defendant cites does not controvert plaintiff's evidence on this point. *See* Statement of Genuine Issues at 6 (and evidence cited therein).

**4.** These entities are not to be confused with Conversagent, Inc., defendant in this action.

**5.** Defendant purports to dispute the proposition that Conversagent Corporation did not conduct any business after December, 2001. They do so by citing to a number of portions of the Finklestein Deposition; however, not one of the cited-to portions of the deposition establishes that any business was conducted after December, 2001, a point essentially conceded at oral argument. *See* Statement of Genuine Issues at 32; Finklestein Depo. at 29 (third parties tried out the product some time before December 2003, without any indication as to whether that occurred after December 2001); 35 (February through April 2001; summer 2001); 37–40 (summer/fall 2001;

92. There is no evidence that Conversagent's web site was operational after 2001.[6]

In December, 2003, Finklestein entered into an agreement[7] with defendant that transferred to defendant both the domain name "conversagent.com" and all rights to the trademark CONVERSAGENT. Def.'s SJ Ex. 14. The agreement also states that the goodwill related to the trademark was transferred to defendant. *Id.*

No products, technology, customer lists, or advertising materials were ever transferred from Conversagent Corporation to defendant. Finkelstein did not ever work for defendant.

In a Thomson and Thomson Research Report prepared for defendant in July, 2003, Conversive was identified as a "competitor[ ]" "offering similar solutions in the marketplace." Pltf's SJ Exs. 1, 1A, and 2. In July, 2003, defendant identified "InstantAgent," "AnswerAgent," "EmailAgent," "AnywhereAgent," "Library Agent," "Assisted ResponseAgent," "College Agent," and "EasyAgent" as "Products & Services" of Conversive. Pltf.'s SJ Exs. 1, 1B, 1C, and 2. In July, 2003, defendant identified "Quantas [sic], Jabba, eLab, Acura, Central Bank of Alva, National Defense

University, Object Tek, Robert Morris University, Global Network Privacy, The Institute for Future Technologies", "Content Partners [sic] Stats, Inc. [sic] Stonesong Press, Anlmax Interactive [sic] Henson Strategic Partners [sic] Computer Aid [sic] Jabber Inc. [sic] The Institute for Global Futures, SpaceDog, The Brand Architect Group [sic] All Instant ... Technology Partners, AT & T Labs, Macromedia, Nuance, Oddcast, [and] Bea" as Conversive's clients and/or partners. Pltf.'s SJ Exs. 1, 1C, 1D, and 2.

In September, 2003, defendant had a trademark search conducted evaluating the name Conversagent. Conversive's registered CONVERSIVE mark is identified in defendant's September 19, 2003 Thomson & Thomson Trademark Search Report. Pltf.'s SJ Exs. 1, 1A, and 2.[8]

On September 25, 2003, defendant filed a U.S. Trademark Application Serial No. 78/305,402 for CONVERSAGENT on an intent-to-use basis. In mid-December, 2003, knowing of plaintiff's existence and its registration of the CONVERSIVE trademark, defendant changed its name to Conversagent. On May 18, 2004, defendant's U.S. Trademark Application Serial

September/October 2001); 43–44 (summer/fall 2001); 46–49 (discussing a time frame in April, with no year specified); and 114 (September or October 2001).

6. Finklestein testified that he did not know whether the web site was operational after this date. Finklestein Depo. at 77–78. He testified that, although he continued to pay for the domain name, customers could not purchase products from the web site. *Id.*

7. Defendant objects to the admissibility of this agreement as hearsay and as lacking foundation. *See* Def.'s Objections re summary judgment evidence at 3 (filed Apr. 17, 2006). However, defendant has itself offered this agreement as evidence. *See* Def.'s SJ Ex. 14 (attached to the Klein Decl.). Defendant's objection is therefore overruled.

8. Defendant objects to this evidence as not properly authenticated. The Levy Declaration authenticates these documents. Defendant also objects to these documents as "incomplete"; however, defendant fails to identify any evidentiary rule or cite to any authority that suggests that documents must be "complete" to be admissible. Finally, defendant objects to the evidence because it denied certain admissions (not related to the documents' genuineness) associated with the referenced documents. Defendant has not been deemed to have made any admissions regarding the documents beyond admitting that the documents are genuine. Defendant's objection is overruled.

No. 78/305,402 was published for opposition. On June 9, 2004, Conversive filed its Notice of Opposition to defendant's U.S. Trademark Application Serial No. 78/305,-402 with the U.S. Patent and Trademark Office. On October 26, 2005, the U.S. Patent and Trademark Office suspended the opposition proceedings pending the outcome of this litigation.

### B.  *Evidence of Actual Confusion*

Conversagent and Conversive offer competing products.[9] For example, Conversive solicited business from Comcast and was informed by Comcast's representative that Comcast was already using Conversive's product, when in fact it was using Conversagent's. Specifically, Bitterman testified that Deckland Ford at Comcast told him that Comcast was already using plaintiff's technology. Bitterman Depo. (Pltf.'s SJ Ex. 19) at 15–16. However, after discussing the matter further, Bitterman determined that Comcast was actually using defendant's technology. *Id.*

As a further example, Conversive solicited business from Bank Mutual Corporation, and was informed that Bank Mutual had already investigated Conversive's products. Conroy Depo. (Pltf.'s SJ Ex. 19) at 54–55. After further inquiry, it became clear that Bank Mutual had investigated Conversagent's products, not Conversive's. *Id.*

### V.  **Trademark Infringement**

■ To establish trademark infringement, a plaintiff must demonstrate that (1) its mark is valid (validity); (2) it is the senior mark (priority); and (3) the defendant's mark is likely to cause confusion in the marketplace. *Brookfield Communica-*

*tions, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir.1999).

### A.  *Validity*

■ Federal registration of a mark is prima facie evidence that the registrant is the owner of the mark and that the registrant has the exclusive right to use the mark on the goods and services specified in the registration. 15 U.S.C. § 1057(b); *Brookfield Communications*, 174 F.3d at 1047; *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996).

Defendant argues that plaintiff's marks are not entitled to protection because they lack the requisite distinctiveness. "Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976) (Friendly, J.)). Suggestive, arbitrary, and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product," are considered to be "inherently distinctive and are [therefore] entitled to [trademark] protection." *Two Pesos*, 505 U.S. at 768, 112 S.Ct. 2753. Conversely, at the other end of the spectrum, generic marks are not entitled to any protection; therefore, they are not permitted to be registered as trademarks. *Id.; see Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n. 8 (9th Cir.1998). Descriptive marks, because of their particular placement—one step above "generic"—on the spectrum of distinctive-

---

9. Defendant purports to dispute this fact; however, the evidence to which defendant cites does not controvert plaintiff's evidence on this point. *See* Statement of Genuine Is-

sues at 29 (and evidence cited therein). The record is clear on the issue of the similarity of the parties' products.

ness, require proof of secondary meaning[10] in order to be protectable. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,* 198 F.3d 1143, 1147 (9th Cir.1999).

Defendant contends that plaintiff's marks are descriptive and that the marks are not entitled to protection because they have not acquired secondary meaning. Plaintiff contends that its marks are suggestive, and that they therefore have the inherent distinctiveness that entitles the mark to trademark protection. On this issue, because it challenges a registered mark, defendant has the burden of establishing both that the marks are descriptive rather than suggestive, and that plaintiff's marks have not acquired secondary meaning. *See Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 876 (9th Cir.1999) (holding that registration of a descriptive mark creates a presumption that the mark has acquired secondary meaning).

A determination of whether a mark is descriptive or suggestive must be made by considering the product sold under the mark. *See Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1218 (9th Cir.1987) (noting that "[w]hether a mark is weak and descriptive or strong and distinctive can be determined only by reference to the goods or services that it identifies."). Descriptive marks "define a particular characteristic of the product in a way that does not require any exercise of the imagination." *Surfvivor Media, Inc. v. Survivor Productions,* 406 F.3d 625, 632 (9th Cir. 2005). An example of a descriptive mark is 'Honey Roasted' for nuts roasted with honey. *Id.* On the other hand, a suggestive mark is one that "requires a mental leap from the mark to the product." *Brookfield Communications,* 174 F.3d at 1058. "If the mental leap between the word and the product's attribute is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." *Self–Realization Fellowship Church v. Ananda Church of Self–Realization,* 59 F.3d 902, 911 (9th Cir.1995) (internal quotation marks and citation omitted).

Here, the uncontroverted evidence establishes that the marks at issue are not descriptive marks; rather, that evidence establishes that the marks are suggestive. At the outset, it is worth noting that "conversive" is an obscure English word that is rarely used. Nevertheless, considering the relevant product is software, and assuming that the word "conversive" means ready to converse, the marks "CONVERSIVE" and "CONVERSIVE AGENT" are suggestive rather than descriptive because it requires an exercise of the imagination to identify an attribute of the product to which the word refers. Although both marks could be read to refer to a dialogue or to a conversation, it requires a substantial mental leap to identify the specific method of communication—a two-way online dialogue between a human website user in one physical location, and a computer-generated responsive customer service "agent" in another physical location.

Moreover, the Court is persuaded by plaintiff's counsel's observation at oral argument that the software at issue merely simulates a conversation; *i.e.,* it gives the appearance of a conversation to the web site user. No actual conversation takes place because the computer software

---

**10.** "Secondary meaning refers to a mark's actual ability to trigger in consumers' minds a link between a product or service and the source of that product or service." *Grupo Gigante SA De CV v. Dallo & Co., Inc.,* 391 F.3d 1088, 1095 (9th Cir.2004). In other words, "a mark has secondary meaning when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Id.* (internal quotation marks and citation omitted).

merely generates a response to a question posed by a web site user. Admittedly, the response may be sophisticated and "chatty";[11] nevertheless, the interaction is not a conversation in the conventional sense. The fact that the product is software that allows a computer to hold up its end of a "conversation" with a human web site user requires a huge mental leap and a great deal of imagination.

The uncontroverted evidence and argument of counsel leads the Court to the inevitable conclusion that the marks at issue are suggestive rather than descriptive. Accordingly, defendant has failed to rebut the presumption of validity conferred upon plaintiff's marks by virtue of their registration, and summary judgment in favor of plaintiff as to the issue of validity is appropriate.

**B.  *Priority***

■ "It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Brookfield Communications,* 174 F.3d at 1046 (internal quotation marks and citation omitted). Where the mark at issue is a federally registered mark, the defendant has the burden of establishing priority over the plaintiff's federally registered mark. *Id.* To establish priority, de-

fendant must first show that Conversagent Corp. made a *bona fide* use of CONVERSAGENT in commerce followed by continuous use of the mark. *Chance v. Pac–Tel Teletrac Inc.,* 242 F.3d 1151, 1157 (9th Cir.2001).

"To be a continuing use, the use must be maintained without interruption.... Trademark rights are not created by sporadic, casual, and nominal shipments of goods bearing a mark. There must be a trade in the goods sold under the mark or at least an active and public attempt to establish such a trade." *Garden of Life,* 318 F.Supp.2d 946, 957 (C.D.Cal.2004) (citing *Casual Corner Associates, Inc. v. Casual Stores of Nevada, Inc.,* 493 F.2d 709, 712 (9th Cir.1974)); *see also Watec Co., Ltd. v. Liu,* 403 F.3d 645, 654 (9th Cir. 2005) ("A person claiming senior rights in a trademark must establish not only that he or she used the mark before the mark was registered, but also that such use has continued to the present."); *accord,* J. Thomas McCarthy, McCarthy on Trademarks § 16:9 (2005) ("To establish ownership of a mark, the prior user must establish not only that at some date in the past it used the mark, but that such use has continued to the present.").

Here, defendant's claim of priority fails for two reasons: First, the uncontroverted evidence is clear that between December, 2001, and December, 2003, there was no use of the CONVERSAGENT mark by either defendant, Conversagent Corpora-

---

11. For instance, plaintiff has submitted evidence regarding their software that is in use for Qantas Airways. See Non-confidential Williams Decl. ¶ 10. Qantas, which flies to Australia, gives its web site users the option to "Ask Vic" any questions they may have. *Id.* "Vic" is a fictional koala bear, created using plaintiff's software, who is very "knowledgeable" about Qantas. *Id.* "Vic" responded as follows to a question about the length of a flight from Los Angeles to Sydney:

It takes about 14 hours to fly from LA to Sydney, which is not that long, mate, once you've had your tucker on the plane, watched a movie and had a few zzz's you'll be there! Also, Qantas has a video screen in every seat so you can watch movies and play games the whole time! It's heaps better than watching a shared screen movie! *Id.*

tion, or Conversagent Canada Corporation. Therefore, defendant fails to meet its burden that the CONVERSAGENT mark was continuously used in commerce. Because of the absence of evidence that the mark was used in commerce, defendant has failed to offer evidence that establishes Conversagent Corporation or Conversagent Canada Corporation had any trademark rights in the CONVERSAGENT mark at the time of the December, 2003, agreement to transfer those rights. In the absence of such evidence, defendant cannot raise a triable issue of fact on the issue of priority, and summary judgment in favor of plaintiff must be granted as to all issues of priority.

Second, the agreement transferring the trademark rights and domain name to defendant in December 2003 purports to transfer the goodwill associated with the trademark. However, where, as here, the mark has not been continuously used in commerce, there can be no goodwill to transfer. *See Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir.1969) (holding that where the assignor had ceased doing business four years prior to the assignment had no goodwill and therefore assigned none), *overruled on other grounds, Golden Door, Inc. v. Odisho*, 646 F.2d 347 (9th Cir.1980). The Court concluded that "[t]he law is well settled that there are no rights in a trademark alone and that no rights can be transferred apart from the business with which the mark has been associated." *Mister Donut*, 418 F.2d at 842.

Although "it is not necessary that the entire business or its tangible assets be transferred to a trademark assignee in order to find that the assignment included goodwill, ... a mere recitation in the assignment agreement that the mark was assigned together with the good will of the business symbolized by the mark is not

sufficient to establish a valid transfer." *Glow Industries, Inc. v. Lopez*, 273 F.Supp.2d 1095, 1108 (C.D.Cal.2003) (internal alterations, quotation marks, and citations omitted). Here, there is no evidence that anything other than a domain name (that may or may not have been in use) was transferred to defendant along with the trademark. Because there is no evidence of any use of the CONVERSAGENT mark between December, 2001, and December, 2003, there is also a lack of evidence that there was any transferable goodwill associated with the mark. Accordingly, the absence of any evidence of a transfer of goodwill along with the mark also requires a finding in favor of plaintiff on the issue of priority.

Summary judgment in favor of plaintiff is granted as to all issues of priority.

### C. *Likelihood of Confusion*

As noted previously, a determination in the Ninth Circuit of whether there is a likelihood of confusion in a trademark case requires examination of the eight *Sleekcraft* factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendants' intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979).

### 1. *Strength of the Mark*

■ Here, plaintiff's marks are registered marks that are entitled to trademark protection. The mark is a suggestive mark, which is inherently distinctive. Therefore, plaintiff's mark is strong and this factor weighs in favor of a finding of a likelihood of confusion. *See Surfvivor*, 406 F.3d at 632 (noting that this factor

weighed in favor of a finding of likelihood of confusion and stating that "[s]ince the term 'Surfvivor' requires some imagination to associate it with the company's beach-related goods, it qualifies as a suggestive mark worthy of some protection.")

### 2. *Proximity of the Goods*

■ Directly competing goods are in the closest proximity under the likelihood of confusion analysis. *Sleekcraft,* 599 F.2d at 348. If goods directly compete, then confusion will usually arise because "complementary products or services are particularly vulnerable to confusion." *Id.* Plaintiff was identified as defendant's competitor in the July, 2003, report. The type of goods and services at issue in this case, computer software for natural language applications and related services, are the same.

This factor favors a finding of a likelihood of confusion.

### 3. *Similarity of the Marks*

■ Similarity of marks is determined by the "appearance, sound, and meaning of the marks when considered in their entirety." *See GoTo.com,* 202 F.3d 1199, 1206 (9th Cir.2000). Similarities are weighed more heavily than differences. *See Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1392 (9th Cir.1993).

Here, the marks are phonetically and visually very similar. They all begin with the element "convers," and the CONVERSAGENT and CONVERSIVE AGENT both contain the elements "convers" and "agent" in the same order.

This factor favors a finding of a likelihood of confusion.

### 4. *Evidence of Actual Confusion*

■ Defendant objects, on hearsay grounds, to evidence offered by plaintiff regarding potential clients' actual confusion. This evidence takes the form of declarations from and the deposition testimony of plaintiff's sales personnel regarding conversations they had with potential purchasers. Plaintiff argues that the out-of-court statements are not offered for the truth of the matter asserted and that they are therefore not hearsay. *See* Fed. R.Evid. 801(c). Plaintiff also argues that the statements are offered to show the then-existing state of mind of the declarant and that they are therefore admissible under an exception to the hearsay rule. *See* Fed.R.Evid. 803(3).

Other courts have considered this issue. Although at least one circuit court has held that such evidence is inadmissible hearsay, the majority of circuit courts that have considered this issue have relied on the evidence rules cited by plaintiff and found that such evidence is admissible. *Compare Duluth News–Tribune, a Div. of Northwest Publications, Inc. v. Mesabi Pub. Co.,* 84 F.3d 1093, 1098 (8th Cir.1996) ("vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature") *with Fun–Damental Too, Ltd. v. Gemmy Industries Corp.,* 111 F.3d 993 1003–04 (2d Cir.1997) (holding that the district court properly admitted statements regarding consumer confusion because they were not offered to show the truth of the matter asserted and were offered to show the state of mind of the declarant) *and Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1160 n. 10 (5th Cir.1982) (same) *and Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City,* 383 F.3d 110, 133 (3d Cir.2004) (same); *and Lyons Partnership, L.P. v. Morris Costumes, Inc.,* 243 F.3d 789, 804 (4th Cir.2001) (same). The Court finds the reasoning of the Second, Third, Fourth and Fifth Circuits to be persuasive.

The authority cited by plaintiff at oral argument does not convince the Court that a contrary ruling is warranted. Plaintiff relies on *Avery Dennison Corp. v. Acco Brands, Inc.*, No. 99–1877, 1999 WL 33117262, 1999 U.S. Dist. LEXIS 21464 (C.D.Cal. Oct. 12, 1999); *Fierberg v. Hyundai Motor America*, 44 U.S.P.Q.2d 1305, 1306, 1997 WL 715457 (C.D.Cal. 1997); and *Alchemy II, Inc. v. Yes! Entertainment Corp.*, 844 F.Supp. 560, 570 (C.D.Cal.1994). Although concluding that evidence similar to that offered here was inadmissible, none of these cases discuss the issue of whether the statements are offered for their truth or whether the state-of-mind exception to the hearsay rule applies. For that reason, the Court does not find them persuasive. Defendant's objection is therefore overruled.

■ "Evidence of actual confusion constitutes persuasive proof that future confusion is likely." *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002). Here, plaintiff has produced evidence of two examples of actual confusion. Given that the product appeals to the extremely limited market of the owners and operators of web sites that are used by a large volume of customers who may have customer service questions that can be answered by use of the parties' software, two instances of actual confusion are very significant. *Cf. Cairns v. Franklin Mint Co.*, 107 F.Supp.2d 1212, 1219 (C.D.Cal. 2000) (finding that "[e]vidence that ten consumers were actually confused [was] minimal" because over 300,000 products had been sold during the relevant time period).

This factor favors a finding of a likelihood of confusion.

### 5. *Marketing Channels Used*

■ "Convergent marketing channels increase the likelihood of confusion." *See Nutri/System, Inc. v. Con–Stan Industries*, 809 F.2d 601, 606 (9th Cir.1987). Here, the parties sell the same goods through the same marketing channels, via the Internet and telephone marketing, to the same potential customers. As such, these potential consumers could very easily mistakenly believe that the goods come from a common source.

This factor favors a finding of a likelihood of confusion.

### 6. *Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser*

■ The rationale behind considering this factor is that where the degree of care in choosing what product to buy is low, consumers will pay less attention to their product selections. Therefore, it is generally assumed that where the degree of care in making a purchasing decision is high, the consumers will pay more attention to their product selections, and it is less likely that the consumers will be confused by similar trademarks. Here, the uncontroverted evidence suggests a high degree of care is used before the parties' products are purchased. Here, a sale cannot be consummated absent personal contact between the potential clients and the parties' sales personnel. The software requires installation, customization, and testing. Although generally such high degree of care would convince the Court that this factor weighed in favor of the defendant, for at least two reasons, the Court is convinced that the opposite is the correct conclusion.

First, the Second Circuit, in applying a factor similar to the *Sleekcraft* "degree of care" factor,[12] held that the likelihood of

12. The relevant test in the Second Circuit is    based on factors enunciated in *Polaroid Corp.*

confusion is actually *increased* where there is evidence that sophisticated consumers are actually confused. *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133 (2d Cir.1999). This is exactly the situation found in the present case. The potential buyers of the parties' products are sophisticated business people rather than run-of-the-mill consumers; nevertheless, at least two of those potential buyers have found the parties' marks to be confusing.

Second, the parties' marks and the products are so similar that "initial interest confusion"—where a "defendant uses [a] plaintiff's trademark in a manner calculated to capture initial consumer attention"—is very likely. *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018–19 (9th Cir.2004); *Brookfield Communications*, 174 F.3d at 1062. Initial interest confusion may constitute trademark infringement even in the absence of a consummated sale transaction. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir.1997) (infringement may occur where a confusingly similar mark "capture[s] initial consumer attention, even though no actual sale is finally completed").

For these reasons, the Court concludes that this factor favors a finding of a likelihood of confusion.

### 7. *Defendant's intent in Selecting the Mark*

■ Although bad intent is not required, where the alleged infringer knowingly adopts a mark similar to another's, there is a presumption that the public will be deceived. *See Sleekcraft*, 599 F.2d at 354. The uncontroverted facts establish that defendant knew of plaintiff's marks

v. *Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.1961) (Friendly, J.). Most relevant to the present discussion is the factor of

and of plaintiff's products before making the decision to use an extremely similar trademark on competing goods.

This factor favors a finding of a likelihood of confusion.

### 8. *Likelihood of Expansion of the Product Lines*

This factor favors a finding of a likelihood of confusion because the product lines are already similar.

### D. *Ruling Regarding Trademark Infringement*

■ Thus, summary judgment in favor of plaintiff is granted as to its first cause of action for trademark infringement.

## VI. False Designation of Origin and Unfair Competition Claims

■ Because partial summary judgment is proper on Conversive's infringement claim, it is also warranted on Conversive's false designation of origin and unfair competition claims under 15 U.S.C. § 1125(a), Cal. Bus. & Prof.Code § 17200, and California common law as well. *See Glow Indus., Inc. v. Lopez*, 252 F.Supp.2d 962, 975 (C.D.Cal.2002) ("The standard for Lanham Act unfair competition is the same as that for Lanham Act trademark infringement .... The elements of [California] state claims for trademark infringement and unfair competition are substantially similar to those of comparable federal claims."); *Brookfield Communications*, 174 F.3d at 1045 (both trademark infringement and unfair competition under the Lanham Act require establishing that the defendant is using a mark confusingly similar to a valid, protectable trademark of the plaintiff);

"the sophistication of the relevant purchasers".

*Cleary v. News Corp.,* 30 F.3d 1255, 1262–63 (9th Cir.1994) ("state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); *Mallard Creek Industries, Inc. v. Morgan,* 56 Cal.App.4th 426, 438, 65 Cal.Rptr.2d 461 (1997) ("The ultimate test for unfair competition is exactly the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks.").

Accordingly, summary judgment in favor of plaintiff is granted as to the second, fifth and sixth causes of action.

## VII. Affirmative Defenses

In light of the foregoing, summary judgment is also appropriate in favor of plaintiff as to a number of the affirmative defenses. All issues regarding the validity of, ownership of, and priority to the marks CONVERSIVE and CONVERSIVE AGENT have been summarily adjudicated in favor of plaintiff. Therefore, to the extent the following affirmative defenses relate to those issues, summary judgment is granted in favor of plaintiff: second and third (ownership of the marks), fourth (priority), fifth (laches), sixth (waiver), seventh (unclean hands), twelfth (abandonment), and thirteenth (estoppel).

Defendant has conceded its tenth and sixteenth affirmative defenses (illegality and statute of limitations). Therefore, summary judgment in favor of plaintiff is granted as to these affirmative defenses as well.

Defendant raised no issues regarding whether plaintiff has standing to pursue its claims. Based on the record before the Court, it is clear that plaintiff has Article III standing. Therefore, summary judgment in favor of plaintiff is granted as to the fourteenth affirmative defense.

Ruling on the fifteenth affirmative defense (lack of harm) is reserved for the damages phase of this litigation.

## VIII. Preliminary Injunction

Because the Court has granted summary judgment in favor of plaintiff as to liability for trademark infringement, entry of a preliminary injunction is appropriate. Although plaintiff delayed in seeking the preliminary injunction, any possible prejudice of that delay is ameliorated by the fact that plaintiffs have established more than a likelihood of success on the merits—they have sought and been granted summary judgment as to its infringement and unfair competition claim. Concurrently with this Order, the Court has entered plaintiff's proposed Preliminary Injunction.

## IX. Conclusion

For the reasons set forth above, the Court grants summary judgment in favor of plaintiff as to the first, second, fifth, and sixth causes of action. Summary judgment in favor of plaintiff is also granted as to a number of defendant's affirmative defenses (as detailed in section VII., *supra* ).

IT IS SO ORDERED.