**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID LAHOTI, an individual,
            *Plaintiff-Appellant,*

v.

VERICHECK, INC., a Georgia Corp.
            *Defendant-Appellee.*

No. 10-35388

D.C. No.
2:06-cv-01132-JLR

OPINION

Appeal from the United States District Court
for the District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted
January 13, 2011—Seattle, Washington

Filed February 16, 2011

Before: Susan P. Graber and Milan D. Smith, Jr.,
Circuit Judges, and Charles R. Breyer,* District Judge.*

Opinion by Judge Charles R. Breyer

---

*The Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

**COUNSEL**

Derek A. Newman and Randall Moeller, Newman & Newman, LLP, Seattle, Washington, for the plaintiff-appellant.

Shannon M. Jost, Stokes Lawrence, P.S., Seattle, Washington, for the defendant-appellee.

**OPINION**

BREYER, District Judge:

Appellant David Lahoti appeals from the district court's finding, on remand, that he violated the Lanham Act, the Anticybersquatting Consumer Protection Act (ACPA), the Washington Consumer Protection Act (WCPA), and Washington common law. The appeal turns in significant part on whether the district court followed this court's instructions on remand in finding that Respondent Vericheck, Inc.'s VERICHECK mark is suggestive, and thus entitled to trademark protection. We find that the district court did follow our remand instructions and that its resulting findings were not clearly erroneous.

**BACKGROUND**

The underlying facts of this case are set out in detail in *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190 (9th Cir. 2009), and will not be repeated here. In that case, we affirmed the district court's finding that Lahoti acted in bad faith. *Id.* at 1202-04. We included a detailed discussion of the principles involved in differentiating between suggestive (i.e., distinctive) and descriptive trademarks. *Id.* at 1196-1202. Following that discussion, we held that, "[w]hile the district court perhaps could have relied exclusively on the registration of the Arizona Mark to determine suggestiveness, it did not do so," but

instead "improperly required that the Mark describe all of Vericheck's services, examined the Mark in the abstract, and concluded that it could not analyze the Mark's component parts." *Id.* at 1204. Accordingly, we vacated the district court's judgment and remanded. *Id.* We did not reach "the district court's conclusions that Vericheck established all other elements of its trademark infringement, ACPA, and WCPA claims, and that Vericheck was entitled to attorneys' fees." *Id.*

On remand, the district court considered our opinion and post-appeal briefing; it did not augment the record. In its Amended Findings of Fact and Conclusions of Law, the district court discussed the principles we articulated, and concluded, again, that the VERICHECK mark is suggestive. The court further found that the mark is strong and entitled to protection. The court concluded that Lahoti had violated the ACPA, and found that Lahoti's use of the mark constituted infringement. The court again held that Lahoti violated the WCPA, and that Vericheck was entitled to an injunction, the maximum statutory damages, and attorneys' fees and costs.

Lahoti again appealed.

## STANDARD OF REVIEW

We review a district court's classification of a trademark's strength for clear error. *Lahoti*, 586 F.3d at 1195. Accordingly, "we defer to the lower court's determination unless, based on the entire evidence, we are possessed of a definite and firm conviction that a mistake has been committed." *Id.* at 1196 (internal quotation marks omitted).

We also review a lower court's determination of the likelihood of confusion for clear error. *See Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1172-73 (9th Cir. 2007). However, we review interpretations of state law, such as the WCPA, de novo. *Id.* at 1173. We also review de novo whether a trade-

mark case is exceptional under 15 U.S.C. § 1117(a). *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003). But we review for abuse of discretion a district court's award of attorneys' fees in an "exceptional case." *Id.*

## ANALYSIS

### A.  *Distinctiveness of the VERICHECK Mark*

The main issue in this appeal is whether the district court properly found that Vericheck's mark is distinctive; "Vericheck cannot prevail on its trademark claims unless its Disputed Mark is distinctive." *Lahoti*, 586 F.3d at 1197. A suggestive mark is inherently distinctive, but a descriptive mark that lacks secondary meaning is not distinctive and is not entitled to trademark protection. *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). On remand, the district court agreed with Vericheck that the mark is suggestive, not descriptive.

Lahoti argues that the district court repeated the same errors on remand that it made initially, demonstrating a failure to analyze the VERICHECK mark in its industry context. In the original appeal, we noted three errors. First, the district court seemed to require that, in order to be considered descriptive, the VERICHECK mark would have to describe the "broad array of electronic transaction processing services that Vericheck provides." *Lahoti*, 586 F.3d at 1201. Second, the district court found that the VERICHECK mark could have described services unrelated to those offered by Vericheck, when in fact the mark must be evaluated "as if it were seen on the goods or services." *Id.* (internal quotation marks omitted). And third, the district court improperly declined Lahoti's request that the mark be broken down into its component parts. *Id.* We conclude that the district court rectified these errors on remand.

**[1]** Analyzing the case anew on remand, the district court indisputably recited the relevant legal principles that we set out. The district court then went on to find that, "[w]hen viewed in the context of Vericheck's services, whether in whole or in part, including Vericheck's check verification services, the VERICHECK mark does not immediately convey information about the nature of Vericheck's services." The district court explained that, "in reaching [its] conclusion," it "considered the component parts of the VERICHECK mark 'as a preliminary step on the way to an ultimate determination of the probable consumer reaction to the composite as a whole.' " Thus, the district court conducted its analysis as instructed.

Moreover, the holding that it reached as a result of that analysis was not clearly erroneous. "If consumer response requires any sort of 'multistage reasoning process' to identify the characteristic of the product which the mark suggests, then the mark should not be regarded as 'merely descriptive.' " 3 Louis Altman & Malla Pollack, *Callmann on Unfair Competition, Trademark and Monopolies* § 18:10 (4th ed. Supp. 2010). Here, for example, consumers must separate "veri" from "check" and reason that "veri" is short for "verification services." In addition, similar marks have been found to be suggestive. *See, e.g.*, *Pilot Corp. of Am. v. Fisher-Price, Inc.*, 501 F. Supp. 2d 292, 303 (D. Conn. 2007) (holding that "Magna Doodle" is only suggestive of children's magnetic drawing toy, noting that it "requires some imagination to get from 'magna' to 'magnetic' "); *In re Shutts*, 217 U.S.P.Q. (BNA) 363, 364-65 (T.T.A.B. 1983)[1] (holding that "Sno-Rake" is not merely descriptive of snow removal tool); *Levi Strauss & Co. v. R. Josephs Sportswear Inc.*, 28 U.S.P.Q. 2d (BNA) 1464, 1471 (T.T.A.B. 1993) (holding that "Action Slacks" is suggestive of pants made of stretchy fabric).

---

[1] Decisions of the Patent Trademark Office Trademark Trial and Appeal Board are not binding but are to be given great weight. *See In re Dr Pepper Co.*, 836 F.2d 508, 510 (Fed. Cir. 1987).

Moreover, the district court based its holding that the VERICHECK mark is distinctive not only on its own analysis of distinctiveness, but also on the PTO's 1975 issuance of a trademark to the Arizona company, also for check verification services. In the first appeal, we "agree[d] with the district court that the PTO's registration of the Arizona Mark is evidence of the Disputed Mark's distinctiveness, given the strong similarity between the appearance and purposes of the Arizona Mark and the Disputed Mark." *Lahoti*, 586 F.3d at 1199. We explained that, while a statutory presumption of distinctiveness only applies when the same mark has been registered, "courts may also defer to the PTO's registration of highly similar marks." *Id.*

Lahoti argues, however, that the district court erred by failing to consider material changes in fact and law since 1975.[2] To the extent that this argument was not foreclosed by our assertion in the first appeal that "the district court perhaps could have relied exclusively on the registration of the Arizona Mark to determine suggestiveness," *Id.* at 1204, it is nonetheless unavailing. Lahoti claims that there has been a legal trend in the past thirty-five years to treat similar marks as descriptive. But three federal trademark registrations that Lahoti raises for the first time on appeal— VERICARD, Registration No. 3,780,924; VERIFONE, Registration No. 3,818,824; and VERI-TAX, Registration No. 3,786, 958— undermine his argument. If those similar marks were not distinctive, the PTO would not have registered them on the Principal Register. In addition, we noted in the last appeal that "the parties did not present any evidence with regard to whether technological changes impact" the interpretation of

---

[2]Lahoti also seeks to distinguish the Arizona Mark, because it included a design component. This difference did not trouble us on the first appeal. *See Lahoti*, 586 F.3d at 1199-1200 & n.6 (noting that the Arizona Mark contained a design component, but holding that the Arizona Mark is evidence of the VERICHECK mark's distinctiveness, as the two marks are "identical in text").

the Arizona Mark. *Id.* at 1200. Finally, the PTO has completed its initial examination of Vericheck's application to register VERICHECK and has approved it for publication for opposition, indicating that the PTO still considers the mark distinctive.**[3]**

**[2]** We owe a great deal of deference to the district court's trademark classification. The district court's initial conclusion was based "in part on reasoning that is contrary to federal trademark law." *Id.* at 1201. On remand, it recited the correct law, and it applied that law properly. Accordingly, the district court's conclusion that the mark is distinctive is AFFIRMED. *See also id.* at 1198 (noting "only a handful of published opinions in the past forty years in which a district court's determination that a mark is suggestive rather than descriptive was held to be clearly erroneous").

### B. *Likelihood of Confusion*

**[3]** Lahoti further appeals the district court's holding that the domain name www.vericheck.com is likely to be confused with the VERICHECK mark. Courts analyzing the likelihood of confusion look at eight factors: (1) the strength of the mark; (2) the similarity of the marks; (3) proximity of the goods/services; (4) similarity in the marketing channels used; (5) the type of goods/services and the degree of care likely to be exercised by purchasers; (6) evidence of actual confusion; (7) defendant's intent in selecting its mark; and (8) likelihood of expansion into other markets. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341-49, 348 (9th Cir. 1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). Specifically in the

---

**[3]**Lahoti argues that this fact is meaningless in light of the application's de-emphasis of Vericheck's check verification services. However, the application described Vericheck's services as "financial transaction verification services" and used the word "check" five times in the short excerpt quoted by Lahoti.

internet context, "the three most important *Sleekcraft* factors . . . are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the parties' simultaneous use of the Web as a marketing channel." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002). When this internet trinity suggest a likelihood of confusion, the other *Sleekcraft* factors must weigh strongly against a likelihood of confusion for the court to find no infringement. *Id.* (internal citation and quotation marks omitted). Accordingly, we analyze the internet trinity first.

### 1.  *Similarity of the Marks*

**[4]** Here, the VERICHECK mark and the www.vericheck.com domain name are, as the district court found, identical or confusingly similar. *See Pub. Serv. Co. of N.M. v. Nexus Energy Software, Inc.*, 36 F. Supp. 2d 436, 439 (D. Mass. 1999) ("*e* NERGYplace" and "energyplace.com" "look virtually identical and sound identical"). This factor weighs in favor of Vericheck.

### 2.  *Relatedness of Goods*

**[5]** Second, the district court found that Lahoti uses www.vericheck.com to provide services that compete with Vericheck. Lahoti protests that, while Vericheck provides check verification services, www.vericheck.com was an unrelated "directory-style website." However, the district court found that Lahoti's website "includes links to companies offering services that compete with those of Vericheck, such as <safepayment.com>, as well as to websites that offer 'Online Payments' and 'Merchant Processing.' " Lahoti does not dispute those facts, protesting only that he "had no ability to control the search results." This is of little import; that Lahoti sent visitors to competitors at all justified the district court's finding that his website competed with Vericheck's business. This factor weighs in favor of Vericheck.

### 3.  *Marketing Channels*

**[6]** Third, the district court found that Lahoti and Vericheck both used the Internet as a marketing channel. Lahoti argues that this is an oversimplification, because he markets to consumers while Vericheck markets to businesses. He does not cite to the record in support of this point, however, so the district court's finding must be affirmed. But presuming Lahoti is correct, this factor would not weigh strongly in Vericheck's favor. *See Interstellar Starship Servs., Ltd.*, 304 F.3d at 943 (where parties marketed to different online customer bases, court properly balanced remaining *Sleekcraft* factors). Therefore, although the internet trinity suggests a likelihood of confusion, we will address the remaining *Sleekcraft* factors.

### 4.  *Remaining Sleekcraft Factors*

**[7]** Strength of the mark is determined with a two-part test. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). The first part is conceptual strength. *See id.*; 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:83 (4th ed. Supp. 2010). We have already concluded that the district court properly found that VERICHECK is a suggestive mark. The second part is commercial strength, or the marketplace recognition value of the mark. *Id.* The district court properly considered and rejected Lahoti's argument that the VERICHECK mark was rendered weak by a "crowded field of third-party users." The district court examined the three prior uses Lahoti raised, noted that there was "no credible evidence" that any of them had used the VERICHECK mark to compete with Vericheck, and found that this was "a far cry from the multitude of registrations and uses that might suggest a weak mark." In contrast, the district court found that Vericheck had a longstanding use of the mark, promoted it through trade shows and promotional incentives, expanded its territory and client list and increased its sales. The district court's conclusion that the mark is strong is valid. This factor favors Vericheck.

**[8]** Next is evidence of actual confusion. *Sleekcraft*, 599 F.2d at 352. On this point, two witnesses testified on behalf of Vericheck that there has been significant confusion as a result of the www.vericheck.com website. The evidence shows that Vericheck and its independent sales offices and resellers receive a substantial number of telephone calls from confused customers who could not find information about Vericheck on www.vericheck.com.

Lahoti argues, however, that the district court should not have considered the evidence of confusion, because it was hearsay.[4] Though the customers' statements were clearly offered for the truth of the matter, they are permissible under the "state of mind" exception to the hearsay rule. *See* Fed. R. Evid. 803(3); *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1091 (C.D. Cal. 2006) (noting that the "majority of circuit courts that have considered this issue have . . . found that such evidence is admissible); 4 McCarthy, supra, § 23:15 (noting that the "majority of courts" have so found and opining that such testimony "is not hearsay"). Accordingly, this factor weighs in favor of Vericheck.

**[9]** The district court noted that "[n]either party presented evidence regarding the likelihood of expansion," and so this factor is neutral.

**[10]** Also, if a typical consumer of the goods or services at issue exercises a high degree of care in purchasing the kind of good or service at issue, this weighs against finding a likelihood of confusion. *Sleekcraft*, 599 F.2d at 353. The district court found that "[e]xercising an average degree of care, a potential purchaser could conceivably visit <vericheck.com> instead of <vericheck.net> and consequently become frus-

---

[4]Notably, we expressed no concern about this evidence in our original order. *See Lahoti*, 586 F.3d at 1194 (noting simply that "Vericheck frequently received calls from its customers complaining that they were confused").

trated or confused by the myriad links found there." That reasoning is valid. *See Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1134 (C.D. Cal. 2001) (holding that "virtually no amount of consumer care can prevent confusion where two entities have the same name"). This factor weighs in favor of Vericheck.

**[11]** Finally, we already affirmed the district court's finding that Lahoti acted in a bad faith attempt to profit from his use of the VERICHECK mark. *Lahoti*, 586 F.3d at 1202-04. This factor, too, weighs in favor of Vericheck.

### 5. *Conclusion as to Likelihood of Confusion*

**[12]** The internet trinity, combined with the remaining *Sleekcraft* factors, weigh overwhelmingly in favor of Vericheck. Accordingly, we AFFIRM the district court's finding of a likelihood of confusion.

### C. *The ACPA*

**[13]** Lahoti also appeals the district court's finding that he is liable for cybersquatting under the ACPA. Cybersquatting is the bad faith registration of a domain name that is identical or confusingly similar to another's distinctive mark. Lanham Act § 43(d), 15 U.S.C. § 1125(d)(1)(A). We already affirmed the district court's holding that Lahoti acted in bad faith and is not entitled to safe harbor under ACPA. *Lahoti*, 586 F.3d at 1202-04. There is also no question that the www.vericheck.com domain name wholly incorporates the VERICHECK mark. In light of our conclusion that the VERICHECK mark is distinctive, the district court's conclusion that Lahoti violated the ACPA is also AFFIRMED.

### D. *The WCPA*

Lahoti additionally appeals the district court's holding that he violated the WCPA. To prove a violation of the WCPA, a

plaintiff must demonstrate that (1) the action complained of is an unfair act or practice; (2) in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring business or property; (5) and with a causal link between the deceptive act and the injury suffered. *See Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208, 210 (Wash. 1987).

**[14]** Confusion of the public typically satisfies the "public interest" element of the WCPA. *Id.* at 212. Lahoti argues that the district court erred in finding that he violated the WCPA, because "the inadvertent infringement of a weak mark is not sufficient to qualify as a public interest." *Seattle Endeavors, Inc. v. Mastro*, 868 P.2d 120, 127 (Wash. 1994). But this is not a case of inadvertent infringement. First, Lahoti acted in bad faith. *Lahoti*, 586 F.3d at 1202-04. Second, we have concluded that the VERICHECK mark was both distinctive and strong. Finally, though Lahoti argues that there is no admissible evidence that anyone in Washington State was actually confused, there is a likelihood of confusion, and there was testimony about significant actual confusion and testimony that Vericheck has numerous customers in Washington State.[5] The district court's finding of a violation of the WCPA is therefore AFFIRMED.

## E. *Attorneys' Fees*

Lahoti challenges the district court's grant of attorneys'

---

[5]Lahoti does not appear to challenge the "in the conduct of trade or commerce" element of the WCPA and, in any case, any challenge would fail. Lahoti profited from the www.vericheck.com domain name when search engines shared a portion of their revenues with him for reredirecting visitors from the site. Lahoti also offered to sell www.vericheck.com for amounts greater than the original registration fee. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1325 (9th Cir. 1998) ("[Defendant's] commercial use was his attempt to sell the trademarks themselves"), *modified on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc) (per curium).

fees under the Lanham Act and under the WCPA. He further opposes Vericheck's request for appellate fees.

### 1.  *Fees Under the Lanham Act*

Pursuant to 15 U.S.C. § 1117(a), the court may award reasonable attorneys' fees to the prevailing party in exceptional cases. Exceptional cases include cases in which the infringing party acted maliciously, fraudulently, deliberately or willfully. *See Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000). The district court determined that this case was exceptional, citing Lahoti's willful registration and use of the www.vericheck.com domain name, his "attempt to extort thousands of dollars from Vericheck," his disregard for Vericheck's trademark rights, his "pattern and practice of cyber-squatting, including a pattern and practice of abusive litigation practices," and his "disregard for the submission of inaccurate answers to interrogatories." Having found the case exceptional, the district court ordered Lahoti to pay Vericheck $78,109.95 in fees and costs.

**[15]** Lahoti argues that this case is not exceptional and compares it to *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993). *But Lindy Pen* involved unintentional infringement. *Id.* at 1406. This case does not. We have already affirmed the district court's holding that Lahoti acted in bad faith. *Lahoti*, 586 F.3d at 1202-04. Indeed, "bad faith of one of the parties may be part of those exceptional circumstances warranting a fee award." *Stephen W. Boney v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997) (internal quotation marks and alterations omitted). Based on Lahoti's bad faith and the other factors cited by the district court, this was indeed an "exceptional" case under 15 U.S.C. § 1117(a). In addition, we have no basis for concluding that the district court's award of $78,109.95 in fees and costs— an amount unchallenged by Lahoti— is an abuse of discretion. The district court's award of fees under 15 U.S.C. § 1117(a) is AFFIRMED.

### 2. *Fees Under the WCPA*

**[16]** Lahoti's argument that fees are not appropriate under the WCPA is simply that there was no violation of the WCPA. We have concluded otherwise. The fee award under the WCPA is therefore AFFIRMED.

### 3. *Appellate Fees*

**[17]** Lastly, in its brief, Vericheck asks us to award it reasonable attorneys' fees as a sanction for Lahoti's frivolous appeal. Fed. R. App. P. 38; 28 U.S.C. § 1912. As a preliminary matter, such a request must be made in a separately filed motion. *See* Fed. R. App. P. 38; *Gabor v. Frazer*, 78 F.3d 459, 459-60 (9th Cir. 1996) (order) (holding that Rule 38 request for sanctions in party's appellate brief does not provide sufficient notice to opposing party). That procedural issue notwithstanding, Lahoti's arguments of error are not "wholly without merit." *See McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981). Accordingly, this request is DENIED.

### CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order, and DENY Vericheck's request for appellate fees.